1                  IN THE UNITED STATES DISTRICT COURT
2                 FOR THE NORTHERN  DISTRICT OF GEORGIA
                            ATLANTA DIVISION
3


4
    UNITED STATES OF AMERICA      )
5                                 )   NO. 1:14-CR-291-SCJ-2
              V.                  )
6                                 )   ATLANTA, GEORGIA
    ANTHONY LICATA                )   JANUARY 25, 2016
7   _____)


8


9                            -   -   -


10


11                      TRANSCRIPT OF PROCEEDINGS
                   BEFORE THE HONORABLE STEVE C. JONES
12                   UNITED STATES DISTRICT JUDGE


13


14                            -   -   -


15


16


17  APPEARANCES OF COUNSEL:


18
         FOR THE UNITED STATES:     C. BROCK BROCKINGTON
19                                  CASSANDRA J. SCHANSMAN

20       FOR THE DEFENDANT:         FRED HADDAD
                                    WILLIAM A. MORRISON
21                                  ALAN ELLIS

22
                          DAVID A. RITCHIE
23                      OFFICIAL COURT REPORTER
                         75 SPRING ST., S.W.
24                      ATLANTA, GEORGIA 30303
                           (404) 215-1516
25



                     UNITED STATES DISTRICT COURT

```
 1              (ATLANTA, FULTON COUNTY, GEORGIA, JANUARY 25, 2016,
 2        IN OPEN COURT)
 3              THE CLERK:  THE COURT CALLS THE UNITED STATES OF
 4  AMERICA V. ANTHONY LICATA, CRIMINAL CASE NUMBER 1:14-CR-291-2.
 5              THE COURT:  ALL RIGHT.  GOOD MORNING, MR. BROCKINGTON
 6  AND MS. SCHANSMAN.
 7              I WILL ALLOW YOU TO INTRODUCE EVERYBODY AT THE TABLE,
 8  MR. BROCKINGTON.
 9              MR. BROCKINGTON:  GOOD MORNING, YOUR HONOR.
10              FIRST OF ALL, THE GOVERNMENT IS READY TO PROCEED THIS
11  MORNING.  SEATED AT COUNSEL TABLE IS ASSISTANT UNITED STATES
12  ATTORNEY CASSANDRA SCHANSMAN, DRUG ENFORCEMENT ADMINISTRATION
13  SPECIAL AGENT SCOTT NESBIT AND DRUG ENFORCEMENT ADMINISTRATION
14  DIVERSION INVESTIGATOR JASON ALLEN.
15              THE COURT:  GOOD MORNING TO EVERYONE.
16              GOOD MORNING, MR. MORRISON.
17              MR. MORRISON:  YES.  THANK YOU.
18              GOOD MORNING, YOUR HONOR.  I'D LIKE TO INTRODUCE A
19  NEW MEMBER OF THE DEFENSE TEAM TODAY.  IT'S ALAN ELLIS FROM
20  CALIFORNIA.
21              THE COURT:  MR. ELLIS.
22              MR. ELLIS:  GOOD MORNING, YOUR HONOR.
23              MR. MORRISON:  HE'S HERE PURSUANT TO OUR PRO HAC
24  MOTION AND THE COURT HAS ALREADY MET FRED HADDAD FROM FORT
25  LAUDERDALE.
```

UNITED STATES DISTRICT COURT

1            THE COURT:  YES.  NICE TO SEE YOU AGAIN.

2            MR. MORRISON:  AND THE DEFENDANT, ANTHONY LICATA, IS

3  PRESENT.

4            THE COURT:  GOOD MORNING, MR. LICATA.

5            THE DEFENDANT:  HOW ARE YOU, SIR?

6            THE COURT:  OKAY.

7            ALL RIGHT.  MR. LICATA, HAVE YOU REVIEWED THE

8  PRESENTENCE REPORT WITH YOUR ATTORNEYS IN THIS CASE?

9            THE DEFENDANT:  YES, SIR.

10            THE COURT:  AT THIS TIME THE COURT WILL ANNOUNCE THE

11  ADVISORY BASE OFFENSE LEVEL FOR COUNT ONE, CONSPIRACY TO

12  DISTRIBUTE CONTROLLED SUBSTANCES, A 32.  THERE IS A RECOMMENDED

13  TWO-LEVEL ENHANCEMENT FOR POSSESSION OF A FIREARM.  THERE IS A

14  TWO-LEVEL ENHANCEMENT FOR PREMISES MAINTAINED FOR THE PURPOSE

15  OF DISTRIBUTING A CONTROLLED SUBSTANCE.  THERE IS A RECOMMENDED

16  TWO-LEVEL ENHANCEMENT FOR COMMITTING IT AS PART OF A CRIMINAL

17  CONDUCT ENGAGED AS A LIVELIHOOD.  THERE IS A FOUR-LEVEL

18  ENHANCEMENT FOR ORGANIZER AND LEADER, ROLE IN THE OFFENSE,

19  GIVING US AN ADJUSTED OFFENSE LEVEL FOR COUNT ONE OF A 42.

20            FOR COUNT 22, THE ADVISORY BASE OFFENSE LEVEL IS

21  RECOMMENDED TO BE A 38.  THERE IS A TWO-LEVEL ENHANCEMENT FOR

22  CONVICTED UNDER 18 U.S.C. SECTION 1956.  THERE IS A RECOMMENDED

23  FOUR-LEVEL ENHANCEMENT FOR ROLE IN THE OFFENSE AS AN ORGANIZER

24  OR LEADER, GIVING US AN ADJUSTED OFFENSE LEVEL OF A 44, THE

25  CONTROLLING OFFENSE LEVEL OF A 44, WITH AN ACCEPTANCE OF


UNITED STATES DISTRICT COURT

1  RESPONSIBILITY THREE-LEVEL REDUCTION, GIVING US A TOTAL OFFENSE

2  LEVEL OF A 41.

3        MR. BROCKINGTON, ARE YOU AND THE GOVERNMENT STILL

4  RECOMMENDING A ONE-LEVEL REDUCTION FOR VARIANCE UNDER JUDICIAL

5  ECONOMY?

6        MR. BROCKINGTON:  YES, WE ARE, JUDGE.

7        THE COURT:  THE COURT WILL GRANT THAT.

8        ARE YOU ALSO RECOMMENDING A TWO-LEVEL REDUCTION FOR A

9  VARIANCE UNDER 18 U.S.C. 3553?

10        MR. BROCKINGTON:  WE ARE RECOMMENDING THAT AS WELL,

11  YOUR HONOR.

12        THE COURT:  NOW, THIS IS SORT OF A NEW ONE FOR ME.

13  EXPLAIN THIS ONE FOR ME.

14        MR. BROCKINGTON:  THAT WOULD MAYBE BETTER BE

15  EXPLAINED WHEN WE ACTUALLY MAKE OUR RECOMMENDATION AND GO OVER

16  THE 3533(A) FACTORS.

17        THE COURT:  OKAY.

18        MR. BROCKINGTON:  BUT I WILL JUST STATE NOW,

19  ESSENTIALLY THAT'S ALL IT IS.  UNDER 3553 WHEN WE TAKE

20  EVERYTHING INTO ACCOUNT SORT OF AT THE END, I THINK THAT THE

21  TWO LEVELS WILL BE MORE EVIDENT THERE IN TERMS OF THEIR

22  APPROPRIATENESS, SO IF I COULD RESERVE THAT UNTIL THE END.

23        THE COURT:  ALL RIGHT.  THEN THE COURT WILL HOLD OFF

24  ON RULING ON THAT AT THIS TIME.

25        MR. BROCKINGTON:  NEEDLESS TO SAY, JUDGE, WE ARE

1  STILL RECOMMENDING IT.

2          THE COURT:  ALL RIGHT.  THE COURT WILL HOLD OFF SO I

3  CAN HEAR MORE ON THAT REASONING.  SO, THEREFORE, WE HAVE A

4  TOTAL OFFENSE LEVEL AT THIS TIME OF A 40, A CRIMINAL HISTORY

5  CATEGORY OF A ONE AND A CUSTODY GUIDELINE RANGE OF 292 TO 365

6  FOR THE CUSTODY GUIDELINE RANGE.  THE STATUTORY MAXIMUM IS 20

7  YEARS FOR EACH COUNT.  THE FINE GUIDELINE RANGE IS $25,000 TO

8  $1 MILLION.  THE TERM OF SUPERVISED RELEASE FOR COUNT ONE AND

9  TWO IS AT LEAST THREE YEARS.  FOR COUNT 22 IT IS ONE TO THREE

10  YEARS.

11          THE COURT WILL ADOPT THE FACTS IN THE PRESENTENCE

12  REPORT TO WHICH NO OBJECTIONS HAVE BEEN MADE AS THE FINDINGS OF

13  THIS COURT.

14          NOW, BEFORE WE GET INTO THE GUIDELINE OBJECTIONS, I

15  WAS READING A SENTENCING MEMORANDUM LAST NIGHT, AND I AM

16  ADDRESSING THIS RIGHT NOW TO YOU, MR. BROCKINGTON, INDICATING

17  THAT YOU ALL HAD STIPULATED - THIS WAS IN A SENTENCING

18  MEMORANDUM FROM THE DEFENSE - INDICATING THAT YOU ALL HAD

19  STIPULATED TO 121 MONTHS.

20          MR. BROCKINGTON:  YES, YOUR HONOR, AND I HAVE SPOKEN

21  WITH MR. MORRISON AND MR. ELLIS REGARDING THAT PARTICULAR LINE

22  IN THEIR SENTENCING MEMO.  I WOULD DISAGREE WITH THAT.  I THINK

23  WHAT THEY WERE REFERRING TO IS, IF WE LOOK AT PAGE 12 OF THE

24  PLEA AGREEMENT, SPECIFICALLY PARAGRAPH 25, THAT PARAGRAPH IS

25  ENTITLED "SPECIFIC SENTENCE RECOMMENDATION."  IT READS:  "THE

1   GOVERNMENT AGREES TO RECOMMEND THAT THE DEFENDANT BE SENTENCED

2   AT THE LOW END OF THE ADJUSTED GUIDELINE RANGE" --

3           THE COURT:  I SAW THAT.

4           MR. BROCKINGTON:  -- "AFTER ANY VARIANCES REQUESTED

5   IN THIS PLEA AGREEMENT ARE APPLIED."  THAT IS THE ONLY

6   REFERENCE IN TERMS OF A SENTENCE RECOMMENDATION FROM THE

7   GOVERNMENT IN THIS PARTICULAR PLEA AGREEMENT.  I THINK THAT

8   THE -- AND I'LL LET MR. ELLIS SPEAK TO THIS, BUT THAT

9   PARTICULAR, THAT PARTICULAR SENTENCE IN THEIR SENTENCING MEMO.

10          BUT I THINK HOW I INTERPRET IT BASED ON TALKING WITH

11  THEM IS THAT IF YOU JUST LOOK AT THE PROVISIONS OF THIS

12  PARTICULAR PLEA AGREEMENT, NOT COUNTING SOME OF THE ADJUSTMENTS

13  OR ENHANCEMENTS THAT WERE APPLIED BY PROBATION IN THE PSR, IF

14  YOU JUST LOOK TO WHAT'S SORT OF IN THE FOUR CORNERS OF THIS,

15  YOU HAVE A 121- TO 151-MONTH SENTENCE.  SINCE WE HAVE

16  RECOMMENDED LOW END, THEY ARE SAYING THAT WE STIPULATED TO A

17  121-MONTH SENTENCE.  I DON'T THINK THAT'S ACCURATE.

18          REALLY WHAT THIS SAYS IS WHATEVER YOU CALCULATE THE

19  GUIDELINES, WE WILL RECOMMEND LOW END.

20          THE COURT:  I TAKE YOUR WORD FOR IT.  YOU ALL DIDN'T

21  STIPULATE TO IT.  THAT'S THE ANSWER TO MY QUESTION.  BECAUSE

22  DEPENDING ON HOW I RULE ON THESE GUIDELINES, IT COULD COME OUT

23  MORE THAN 121 MONTHS.

24          AND HERE'S THE SITUATION:  THE AGREEMENT, MR. ELLIS,

25  INDICATES THAT YOU ALL CANNOT ARGUE FOR A SENTENCE OUTSIDE OF

UNITED STATES DISTRICT COURT

1   THE GUIDELINES IF YOU GO BACK TO THAT PARAGRAPH READ BY

2   MR. BROCKINGTON.  AND THAT'S WHY I WANTED TO ADDRESS IT BEFORE

3   WE GET STARTED, BECAUSE I READ THE PRESENTENCE REPORT,

4   OBVIOUSLY, A LONG TIME AGO AND I AM FAMILIAR WITH WHAT THE

5   RECOMMENDATION OR WHAT YOU ALL SAID THE PSR SAYS.  BUT ONCE I

6   READ THE MEMO, I SAID, WELL, LET'S MAKE SURE WE ARE ALL ON THE

7   SAME PAGE THIS MORNING, BECAUSE ON MINE IT'S PAGE NINE AND IT

8   SAYS AGAIN THE PARTIES AGREE NOT TO REQUEST ANY SENTENCE

9   OUTSIDE OF THE GUIDELINE RANGE, NOR ANY GUIDELINE ADJUSTMENT

10  FOR ANY REASON THAT IS NOT SET FORTH IN THE PLEA AGREEMENT.

11          SO, MR. ELLIS, THE WAY I AM READING THIS, AND I'LL

12  HEAR FROM YOU, HOWEVER I RULE ON THESE OBJECTIONS, WHATEVER

13  COMES OUT IN THOSE GUIDELINES, THE GOVERNMENT IS REQUIRED TO

14  RECOMMEND THE LOW END.  AND ACCORDING TO THIS, YOU ALL CAN'T

15  ARGUE AGAINST IT.  AND THAT'S WHY I WANT TO ADDRESS THIS,

16  BECAUSE YOUR SENTENCING MEMORANDUM LAST NIGHT HAD A WHOLE

17  DIFFERENT TAKE THAN THIS.

18          MR. ELLIS:  AND I AM READING THAT PARAGRAPH 25, YOUR

19  HONOR, MAY IT PLEASE THE COURT, TO INDICATE THAT THE GOVERNMENT

20  HAS TO RECOMMEND THE GUIDELINES STIPULATED IN THE AGREEMENT,

21  NOT AS FOUND IN THE PSR.

22          THE COURT:  WELL, I ASKED MR. BROCKINGTON ABOUT TWO

23  MINUTES AGO DID YOU ALL HAVE A STIPULATED AGREEMENT FOR 121

24  MONTHS AND THEN HE SAID NO.

25          MR. ELLIS:  SO, AGAIN, AS THE COURT IS WELL AWARE,

1   YOU KNOW, WHEN THE GOVERNMENT DRAFTS A PLEA AGREEMENT, ANY

2   AMBIGUITY HAS TO BE CONSTRUED AGAINST THE GOVERNMENT AND IN

3   FAVOR OF THE DEFENDANT.

4          THE COURT:  I DON'T SEE ANY AMBIGUITY HERE.

5          ON PAGE NINE OF MY REPORT, AND YOU ALL'S MAY BE

6   DIFFERENT, BUT IT INDICATES AGAIN -- I'M READING IT STRAIGHT UP

7   AND I WON'T READ THE WHOLE PARAGRAPH, BUT IT SAYS -- I'LL READ

8   THE WHOLE PARAGRAPH.

9          THE PARTIES AGREE THAT THERE EXISTS NO AGGRAVATING OR

10  MITIGATING CIRCUMSTANCES OF A KIND, OR TO A DEGREE, NOT

11  ADEQUATELY TAKEN INTO CONSIDERATION BY THE UNITED STATES

12  SENTENCING COMMISSION IN FORMULATING THE SENTENCING GUIDELINES

13  JUSTIFYING A DEPARTURE PURSUANT TO U.S.S.G SECTION 5K2.  THE

14  PARTIES AGREE NOT TO REQUEST ANY SENTENCE OUTSIDE OF THE

15  GUIDELINES RANGE NOR ANY GUIDELINES ADJUSTMENT FOR ANY REASON

16  THAT IS NOT SET FORTH IN THE PLEA AGREEMENT.

17         THEN I GOT YOUR SENTENCING MEMORANDUM LAST NIGHT AND

18  IN YOUR SENTENCING MEMORANDUM YOU INDICATED THAT YOU ALL AND

19  THE GOVERNMENT HAD STIPULATED TO 121 MONTHS.  WELL, I SAID,

20  WHOA.  HOLD ON.  THIS IS NOT -- THIS IS TWO SEPARATE THINGS

21  HERE, BECAUSE IF I RULE ON THE GUIDELINES AND BASED ON HOW I

22  RULE ON THESE GUIDELINE OBJECTIONS THE LOW END OF THE

23  GUIDELINES REGARDING YOUR CLIENT COULD BE A WHOLE LOT HIGHER

24  THAN 121 MONTHS.

25         MR. ELLIS:  I AM AWARE OF THAT.

1          THE COURT:  BUT IN THE OTHER CASE, IF YOU ALL HAVE

2    STIPULATED TO SOMETHING, THEN I AM LOOKING AT IT OUT OF A

3    DIFFERENT POINT OF VIEW.  SO I'VE GOT TO BE UP FRONT WITH YOU

4    THAT THE GOVERNMENT INDICATES HERE THAT THERE IS NO STIPULATION

5    FOR 121 MONTHS.

6          NOW, I WILL HEAR YOUR ARGUMENT ON THAT.

7          MR. ELLIS:  I ALSO CALL THE COURT'S ATTENTION TO

8    PARAGRAPH 17 OF THE AGREEMENT ON PAGE SEVEN.

9          THE COURT:  ALL RIGHT.

10          MR. ELLIS:  THE GOVERNMENT CAN'T SUPPORT ANY

11    ENHANCEMENT OUTSIDE THE STIPULATION IN THE AGREEMENT UNLESS IT

12    RECEIVES ADDITIONAL EVIDENCE THAT WOULD JUSTIFY THAT

13    ENHANCEMENT.

14          THE COURT:  WELL, THAT'S WHAT THEY'VE GOT TO DO THIS

15    MORNING IN THEIR OBJECTIONS.

16          IN OTHER WORDS, DO YOU ALL NEED A MINUTE TO CONFER?

17    IF NOT, I AM READY TO GO FORWARD ON THIS.  BUT WHEN I GO

18    FORWARD, I AM GOING FORWARD BASED ON HOW I UNDERSTAND IT.

19          NOW, IF YOU AND MR. BROCKINGTON NEED TO TALK FOR

20    ABOUT FIVE MINUTES, I'LL GIVE YOU THAT, BUT IF YOU ALL HAVE GOT

21    YOUR POSITIONS TAKEN, THEN I AM READY TO GO FORWARD.

22          MR. ELLIS:  I THINK OUR POSITIONS ARE AS STATED AND

23    UP TO THE COURT.

24          THE COURT:  IN THAT CASE, THEN, THERE IS NO

25    STIPULATED 121 MONTHS AS I SEE IT.


UNITED STATES DISTRICT COURT

1        MR. MORRISON:  YOUR HONOR, COULD I ASK MR. ELLIS

2   TO -- COULD WE TAKE THAT FIVE MINUTES?

3        THE COURT:  THAT MAY NOT BE A BAD IDEA.  IT'S 10:30.

4   I'LL BE BACK IN AT 10:35.

5                        (RECESS)

6        ALL RIGHT, MR. MORRISON.

7        MR. MORRISON:  YES.  WE ARE READY TO PROCEED.

8        THE COURT:  ALL RIGHT.  MR. BROCKINGTON, MR. ELLIS,

9   ARE YOU ALL'S POSITIONS STILL THE SAME?

10        MR. ELLIS:  YES, YOUR HONOR.

11        THE COURT:  THEN THERE IS NO AGREEMENT.

12        MR. MORRISON:  JUDGE, COULD I JUST CLARIFY ONE THING?

13   BECAUSE THERE IS A LOT OF MOVING PARTS HERE.

14        THE LANGUAGE THAT WE USED IN THE MOTION, STIPULATING,

15   THAT WAS REALLY OUR INTERPRETATION OF THE PLEA AGREEMENT.  AS

16   YOU CAN TELL, WE SHOW IN THE MOTION HOW WE CALCULATED THE

17   GUIDELINES RANGE.

18        THE COURT:  RIGHT.

19        MR. MORRISON:  AND AS IT TURNED OUT, OUR CALCULATIONS

20   SHOWED A LOW END OF 121.  THAT'S WHY WE MADE THAT FURTHER

21   STATEMENT.  WE DIDN'T MEAN TO INFER OR IMPLY OR ANYTHING ELSE

22   THAT THE GOVERNMENT HAD ACTUALLY AGREED TO 121 MONTHS.

23        THE COURT:  ALL RIGHT.  THANK YOU, MR. MORRISON.

24        OKAY.  MY UNDERSTANDING IS THERE ARE NO GUIDELINE

25   OBJECTIONS COMING FROM THE GOVERNMENT.


UNITED STATES DISTRICT COURT

1          MR. BROCKINGTON:  THAT IS CORRECT, YOUR HONOR.

2          THE COURT:  OKAY.  AND, MR. ELLIS, MY UNDERSTANDING

3  IS THERE ARE FOUR GUIDELINE OBJECTIONS COMING FROM THE DEFENSE,

4  STARTING OFF WITH THE CHARACTERISTIC OF POSSESSION OF A

5  FIREARM.

6          YOU MAY PROCEED WITH YOUR ARGUMENT.

7          MR. ELLIS:  MAY IT PLEASE THE COURT, AGAIN, I AM

8  SORRY THAT -- I CAME INTO THIS CASE VERY LATE, YOUR HONOR, AND

9  THAT'S WHY THIS GOT FILED AS LATE AS IT GOT.

10          THE COURT:  NO PROBLEM.

11          GO AHEAD.

12          MR. ELLIS:  OKAY.  I THINK WHAT MAKES THIS CASE

13  DIFFERENT, FIRST OF ALL, IS THAT ON NOVEMBER 1, '15, AS THE

14  COURT IS WELL AWARE, THE GUIDELINES WERE AMENDED TO NARROW

15  QUITE SIGNIFICANTLY THE DEFINITION OF RELEVANT CONDUCT.  IT IS

16  NOT WHAT THE DEFENDANT COULD HAVE REASONABLY FORESEEN ANY

17  LONGER.  IT'S WHAT THE DEFENDANT AGREED TO.  AND INASMUCH AS

18  MR. SINGLETARY CARRIED A FIREARM AS A SECURITY GUARD, THERE HAS

19  TO BE A SHOWING THAT THERE WAS AN AGREEMENT BETWEEN THE TWO

20  THAT HE SHOULD DO SO IN ORDER TO PROTECT THE DRUG OPERATION.

21  IT'S OUR POSITION THAT THE WEAPON WAS SIMPLY INCIDENTAL TO THE

22  OFFENSE.

23          THE COURT:  WELL, LET ME ASK YOU A QUESTION.  WAS

24  MR. SINGLETARY A CO-CONSPIRATOR IN THIS?

25          MR. ELLIS:  YES.

UNITED STATES DISTRICT COURT

1           THE COURT:  AND YOU ARE NOT ARGUING ABOUT THE

2   CONSPIRACY, RIGHT?

3           MR. ELLIS:  PARDON ME?

4           THE COURT:  YOU ARE NOT ARGUING THAT THIS --

5           MR. ELLIS:  OH, NO, NO.  FOR TRIAL PURPOSES, YEAH.

6   FOR SENTENCING PURPOSES IT'S A DIFFERENT MATTER, THOUGH.

7           THE COURT:  OKAY.

8           MR. ELLIS:  SO THAT'S OUR POSITION.  AND AGAIN, IF --

9   UNLESS THE COURT HAS ANY QUESTIONS FOR ME OUTSIDE OF WHAT I

10  HAVE IN THE MEMORANDUM --

11          THE COURT:  I DON'T HAVE ANY QUESTIONS.

12          MR. ELLIS:  ALL RIGHT.

13          THE COURT:  LET'S LET MR. BROCKINGTON BE HEARD ON

14  THIS ONE.  WE'LL DO THEM ONE AT A TIME.

15          MR. ELLIS:  SURE.

16          THE COURT:  THANK YOU, MR. ELLIS.

17          MR. BROCKINGTON?

18          MR. BROCKINGTON:  YOUR HONOR, WITH RESPECT TO THE

19  2D1.1(B)(1), POSSESSION OF A FIREARM, ONCE THE GOVERNMENT HAS

20  SHOWN BY A PREPONDERANCE OF THE EVIDENCE THAT THE FIREARM WAS

21  PRESENT AT THE SITE OF THE CHARGED CONDUCT THE BURDEN SHIFTS

22  AGAIN TO THE DEFENDANT TO SHOW THAT A CONNECTION BETWEEN THAT

23  PARTICULAR WEAPON AND THE OFFENSE IS CLEARLY IMPROBABLE.

24          THE COURT:  LET ME ASK YOU THIS QUESTION:  TELL ME

25  ABOUT THE FURTHERANCE.  HOW IS THIS WEAPON USED IN FURTHERANCE

1   OF THE CONSPIRACY?

2          MR. BROCKINGTON:  CERTAINLY, YOUR HONOR.

3          FIRST, JUST SO WE CAN GET PAST MR. ELLIS'S ARGUMENT

4   REGARDING THE FORESEEABILITY VERSUS WHAT THE DEFENDANT AGREED

5   TO, THAT PARTICULAR FIREARM WAS PROVIDED BY THE DEFENDANT TO

6   MR. SINGLETARY FOR MR. SINGLETARY TO PATROL NOT JUST THE INSIDE

7   OF THE PARTICULAR PAIN CLINIC BUT ALSO THE PARKING LOT AREA AS

8   WELL.

9          AS YOUR HONOR IS AWARE AND AS I AM SURE WE WILL

10  ADDRESS TODAY, THIS PARTICULAR PAIN CLINIC WAS AN OSTENSIBLE

11  PAIN CLINIC BUT IT WAS OPERATING AS A PILL MILL.  MR. LICATA

12  HAS BEEN CHARGED AND PLED GUILTY TO A VIOLATION OF 21 U.S.C.

13  841 AND THAT IS A DRUG DISTRIBUTION COUNT.

14         SO IN TERMS OF HOW DOES THIS FURTHER THE PARTICULAR

15  CONSPIRACY, THIS WAS NOT A TYPICAL DOCTOR'S OFFICE.

16  MR. SINGLETARY WAS NOT EVEN A SECURITY GUARD.  THIS IS JUST A

17  FRIEND WHO HAS BEEN HIRED OR ACQUAINTANCE OF THE DEFENDANT WHO

18  HAS BEEN HIRED, PAID A DAILY FEE IN CASH TO PATROL THIS

19  PARTICULAR PARKING LOT AND WAITING ROOM.

20         THE REASON FOR THAT IS BECAUSE THESE ARE NOT

21  LEGITIMATE PATIENTS WHO ARE COMING TO THIS PARTICULAR CLINIC.

22  THESE ARE MOSTLY PILL SEEKERS AND/OR DRUG DEALERS WHO HAVE COME

23  TO THIS PARTICULAR CLINIC TO BE SEEN BY THIS DOCTOR TO BE

24  ILLEGALLY PRESCRIBED SCHEDULE II CONTROLLED SUBSTANCES.  FOR

25  THAT REASON THAT ELEMENT IS NOT YOUR TYPICAL SORT OF PAIN

1   CLINIC SETTING.

2           THESE ARE, LIKE I SAID, PILL SEEKERS.  THESE ARE

3   ADDICTS.  THESE ARE DRUG DEALERS.  THERE WAS OPEN DISCUSSION OF

4   DIVERSION INSIDE THE CLINIC.  THERE WAS OPEN DISTRIBUTION OF

5   LOOSE PILLS OUTSIDE THE CLINIC.  THIS WAS OBSERVED BY

6   UNDERCOVER OFFICERS ON NUMEROUS, SORT OF MULTIPLE UNDERCOVER

7   VISITS.

8           THE COURT:  HOW WAS THE WEAPON -- WHAT PART DID THE

9   WEAPON PLAY IN THIS, IF ANY?

10          MR. BROCKINGTON:  ESSENTIALLY, TWOFOLD.  I THINK ONE

11  THING WE NEED TO DO SORT OF AT THE OUTSET, WE SHOULD PROBABLY

12  DO THIS, BECAUSE THIS IS GOING TO BE A BACKDROP OF ALL THE

13  SENTENCING HEARINGS WE HAVE TODAY.  THIS IS -- AND I WILL

14  BORROW ONE OF MY COLLEAGUE'S PHRASES THAT HE USED SORT OF LAST

15  WEEK.  THIS WAS WHITE COLLAR DRUG DEALING.

16          I MEAN WE HAVE DRUG DEALERS IN SCRUBS AND WE HAVE

17  DRUG DEALERS IN LAB COATS.  SO WHAT WE SHOULD DISPENSE WITH AT

18  THE OUTSET IS THE FACT THAT THIS IS A MEDICAL, SOME SORT OF

19  LEGITIMATE MEDICAL BUILDING JUST BECAUSE THERE ARE PAPER FILES

20  AND THERE ARE SCRUBS AND THERE ARE STETHOSCOPES IN THIS

21  PARTICULAR OFFICE.

22          WE SHOULD LOOK AT THIS AS WHAT IT IS.  THIS WAS A

23  DISTRIBUTION HOUSE FOR SYNTHETIC OPIATES, SCHEDULE II

24  CONTROLLED SUBSTANCES.  SO WHAT WAS GOING IN THIS BUILDING IS

25  NOT MEDICINE.  WHAT'S GOING ON IN IS ILLEGAL PRESCRIBING OF

1  SCHEDULE II CONTROLLED SUBSTANCES, MOSTLY OXYCODONE, OUTSIDE

2  THE COURSE OF THE USUAL PROFESSIONAL PRACTICE AND FOR NO

3  LEGITIMATE MEDICAL PURPOSE.  IF THAT'S DONE, IT IS DRUG DEALING

4  JUST AS IF THEY WERE SELLING HEROIN INSIDE OF THAT PARTICULAR

5  BUSINESS.

6          ALSO, THESE WERE MOSTLY CASH-PAYING CUSTOMERS.  SO ON

7  A DAILY BASIS OR, EXCUSE ME, WHEN THE CLINIC WAS OPEN, THERE

8  WOULD BE LARGE CASH DEPOSITS MADE SEVERAL TIMES THROUGHOUT THE

9  DAY INTO BANK ACCOUNTS, INTO CASH -- SORT OF CORPORATE BANK

10  ACCOUNTS.  SO WHAT WE HAVE HERE IS VERY TYPICAL OF WHAT WE

11  COULD THINK OF AS SORT OF A STREET DRUG, A STREET DRUG SORT OF

12  ENVIRONMENT.

13          THE COURT:  SO YOU ARE SAYING THEY ARE NO DIFFERENT

14  THAN SOMEBODY SELLING DRUGS ON THE STREET CORNER OR OUT OF THE

15  BACK SEAT OF THEIR CAR?

16          MR. BROCKINGTON:  I MEAN THERE IS NO DIFFERENCE.

17  THAT IS WHAT 21 U.S.C. 841, THAT IS ESSENTIALLY WHAT THAT SAYS,

18  THAT WHEN THERE IS AN ILLEGAL PRESCRIPTION, THE PRESCRIPTION

19  ITSELF IS THE DRUG DISTRIBUTION.  THAT'S WHAT TOOK PLACE.

20  THERE WAS NO SELF-DISPENSING HERE.  I WILL ADMIT THAT.  THERE

21  WAS NO SELF-DISPENSING.  HOWEVER, THAT DOESN'T REALLY PLAY --

22  THAT DOESN'T FACTOR INTO IT.

23          WHAT YOU'VE GOT IS NOW YOU'VE GOT YOUR COUPON FOR

24  DRUGS AND ALSO THERE'S BEEN A PAYMENT OF DRUGS, A PAYMENT OF

25  DRUGS PROCEEDS.  SO TO CHARACTERIZE THIS AS SIMPLY A SECURITY

1  GUARD WHO IS CONCERNED ABOUT PROTECTING HIMSELF AND REVENUES

2  EARNED BY THE CLINIC WOULD BE INAPPROPRIATE.

3          THESE WERE DRUG PROCEEDS.  THESE ARE PEOPLE, NOT

4  LEGITIMATE PATIENTS, COMING AND PAYING $300, $400 AT A TIME TO

5  BE SEEN BY A PHYSICIAN TO RECEIVE A PRESCRIPTION FOR SYNTHETIC

6  OPIATES FOR NO LEGITIMATE MEDICAL PURPOSE.  AND BECAUSE YOU

7  HAVE THE DRUG DISTRIBUTION THAT'S GOING ON AND BECAUSE YOU HAVE

8  THE HIGH DRUG PROCEEDS IN CASH, IN UNITED STATES CURRENCY, YOU

9  NEED -- THEY HAD EMPLOYED A SECURITY GUARD WHO WAS ARMED WHO

10  WOULD PATROL THE OUTSIDE AND THE INSIDE.  IT IS THE SAME AS IF

11  IT WERE A STASH HOUSE OUT ON THE STREET WHERE THERE IS DOPE

12  INSIDE AND THERE ARE DRUG PROCEEDS INSIDE AND THERE IS AN ARMED

13  GUARD THERE.

14          IT SHOULDN'T MATTER THAT THERE WERE NEVER ANY

15  INCIDENTS.  THE POINT AND THE POLICY OF THAT IS BECAUSE

16  VIOLENCE IS ASSOCIATED WITH DRUG DISTRIBUTION, THAT WE WANT TO

17  DISINCENTIVIZE THAT SO THAT'S WHY YOU HAVE THAT IN PLACE.  SO I

18  DON'T THINK IT MATTERS THAT THERE WAS NEVER A CONFLICT.  I

19  DON'T BELIEVE THAT THE SECURITY GUARD EVER HAD TO ACTUALLY

20  DISCHARGE A WEAPON.  THAT REALLY DOESN'T MATTER.  THE FACT THAT

21  HE IS PATROLLING IS ENOUGH.

22          THE COURT:  OKAY.

23          MR. BROCKINGTON:  I WILL REFERENCE ALSO JUST VERY

24  BRIEFLY UNITED STATES V. TRUJILLO.  IT'S 146 F.3D 838.

25          THE COURT:  SAY THAT NAME AGAIN.

UNITED STATES DISTRICT COURT

```
1          MR. BROCKINGTON:  TRUJILLO.  IT'S SPELLED
2   T-R-U-J-I-L-L-O, 146 F.3D 838.  IT'S AN ELEVENTH CIRCUIT CASE
3   (1998).  AND THE REASON WHY I WANTED TO REFERENCE THIS CASE IS
4   BECAUSE IN THIS PARTICULAR CASE THERE WAS A GUN ENHANCEMENT
5   THAT WAS APPLIED.  AND ESSENTIALLY THE FACTS OF THAT PARTICULAR
6   CASE WERE THAT THERE WAS -- THE FACTS ARE SOMEWHAT DIFFERENT,
7   OBVIOUSLY.  THIS WAS A WAREHOUSE.  THERE WAS MULTIPLE KILOGRAMS
8   OF COCAINE INSIDE.  THE REASON WHY I WANT TO BRING THIS
9   PARTICULAR CASE UP IS FOR THIS ONE PARAGRAPH THAT I WILL READ.
10          "FUENTES NEXT ARGUES THAT THE CONNECTION BETWEEN HIS
11   GUN AND THE COCAINE TRANSACTION WAS CLEARLY IMPROBABLE BECAUSE
12   HE LEFT THE GUN IN A SEPARATE OFFICE, AND BECAUSE HE CARRIED
13   HIS GUN LEGALLY AS A SECURITY GUARD (HE POSSESSED A CONCEALED
14   WEAPON PERMIT).  THE DISTRICT COURT REJECTED THIS ARGUMENT,
15   FINDING THAT THIS JUST `INDICATES THAT THE GUN WAS THERE FOR
16   PERSONAL SECURITY IN THE EVENT SOMETHING WENT WRONG IN
17   CONNECTION WITH THE DRUG TRAFFICKING TRANSACTION.'  WE HOLD
18   THAT THE DISTRICT COURT'S FINDING WAS NOT CLEARLY ERRONEOUS."
19          NOW, I UNDERSTAND THAT THAT WAS JUST FOR SORT OF A
20   CLEARLY ERRONEOUS ARGUMENT BUT JUST THAT THE ELEVENTH CIRCUIT
21   HAS CONTEMPLATED A SIMILAR FACT SCENARIO WHERE YOU HAVE SOMEONE
22   WHO WAS A SECURITY GUARD.
23          NOW, MR. SINGLETARY IN THIS CASE, OUR POSITION IS
24   THAT HE WAS NOT A LEGITIMATE SECURITY GUARD, BUT EVEN IN THE
25   CASE WHERE YOU DO HAVE SORT OF A LEGITIMATE SECURITY GUARD WITH
```

1   A CONCEALED WEAPON PERMIT THAT IS NO CONSEQUENCE TO THE

2   ELEVENTH CIRCUIT IN TERMS OF DETERMINING WHETHER THE GUN

3   ENHANCEMENT IS APPROPRIATE.

4          SO, AGAIN, I DON'T BELIEVE THAT THE DEFENDANT CAN

5   OVERCOME THEIR BURDEN HERE TODAY THAT IT'S CLEARLY IMPROBABLE

6   THAT THERE'S NO CONNECTION BETWEEN THE GUN AND THE OFFENSE.

7          THE COURT:  THANK YOU, MR. BROCKINGTON.

8          MR. ELLIS, IS THERE ANYTHING ELSE ON THIS PARTICULAR

9   OBJECTION?

10          MR. ELLIS:  NO, YOUR HONOR, JUST THE SAME ARGUMENT,

11  THAT IS, THE GOVERNMENT BY THE AGREEMENT IS NOT ALLOWED TO

12  ARGUE FOR THE ENHANCEMENT.

13          THE COURT:  I AM GOING TO OVERRULE YOUR OBJECTION.  I

14  NOTE YOUR EXCEPTION TO MY RULING FOR THIS PARTICULAR OBJECTION.

15          THE NEXT OBJECTION IS THE CHARACTERISTIC PATTERN OF

16  CRIMINAL CONDUCT ENGAGED IN AS A LIVELIHOOD.

17          MR. ELLIS:  YES, YOUR HONOR.  THAT IS COVERED BY A

18  SUPPLEMENTAL SENTENCING MEMORANDUM THAT WE HAD ANTICIPATED.

19          THE COURT:  I RECEIVED IT.  I GOT IT THIS MORNING

20  FROM MR. MORRISON.  I'VE READ IT.

21          ANYTHING YOU WANT TO ADD TO IT?

22          MR. ELLIS:  IT'S RARER THAN HEN'S TEETH THAT THIS

23  THING IS IMPOSED AND IT GENERALLY IS IMPOSED IN CASES WHERE

24  PEOPLE HAVE A PRIOR RECORD.  MR. LICATA HAS NONE.

25          SO I WOULD ASK THAT REMEMBER THE GUIDELINES, OF

1 COURSE, NOW ARE ADVISORY.  I WOULD ASK THE COURT NOT TO IMPOSE

2 THAT ENHANCEMENT FOR REASONS SET FORTH IN OUR SUPPLEMENTAL.

3            THE COURT:  THANK YOU, MR. ELLIS.

4            MR. BROCKINGTON?  NOW, MR. BROCKINGTON --

5            MR. BROCKINGTON:  YES, YOUR HONOR.

6            THE COURT:  -- THERE IS AN ARGUMENT THAT YOU ALL IN

7 THE PLEA AGREEMENT INDICATED THAT YOU WOULD NOT PURSUE THIS.

8 EVEN THOUGH I AM NOT BOUND BY ANY PLEA AGREEMENT YOU ALL HAVE,

9 BUT IT EVEN STATES IT IN THE PSR.

10            MR. BROCKINGTON:  I'M SORRY?  THE PLEA AGREEMENT, YOU

11 ARE SAYING --

12            THE COURT:  WELL, MR. ELLIS IS ARGUING THAT YOU ALL

13 HAVE A PLEA AGREEMENT THAT YOU ALL WILL NOT PURSUE THIS

14 TWO-LEVEL ENHANCEMENT.

15            MR. BROCKINGTON:  I DISAGREE.  I DON'T THINK THAT

16 MR. ELLIS CAN POINT TO WHERE WE SAY THAT IN THE PLEA AGREEMENT,

17 THAT WE SPECIFICALLY REFERENCE THAT WE WILL NOT PURSUE THIS.

18            SINCE THERE HAVE BEEN NUMEROUS REFERENCES TO

19 PARAGRAPH 17, I THINK WE MIGHT AS WELL TAKE A LOOK AT IT NOW,

20 YOUR HONOR.  IT'S ON PAGE SEVEN OF THE PLEA AGREEMENT.

21            THE COURT:  WELL, ARE WE TALKING ABOUT THE

22 LIVELIHOOD?

23            MR. BROCKINGTON:  I MEAN WE CAN TALK ABOUT THE

24 LIVELIHOOD, BUT --

25            THE COURT:  LET'S JUST TALK ABOUT THEM ONE AT A TIME.


UNITED STATES DISTRICT COURT

1  LIVELIHOOD, LET'S TALK ABOUT THAT ONE.

2          MR. BROCKINGTON:  IN TERMS OF THE CRIMINAL

3  LIVELIHOOD, I WILL BE BRIEF.  I MEAN WE WILL STAND WITH THE

4  EXPLANATION PROVIDED IN THE PSR.

5          I WILL DIRECT THE COURT'S ATTENTION TO SECTION 4B1.3

6  OF THE UNITED STATES SENTENCING GUIDELINES.  THAT'S WHERE

7  CRIMINAL LIVELIHOOD IS DEFINED.  ESSENTIALLY I AM GOING TO

8  REFER TO APPLICATION NOTES ONE AND TWO OF THE COMMENTARY.

9          PATTERN OF CRIMINAL CONDUCT MEANS PLANNED CRIMINAL

10  ACTS OCCURRING OVER A SUBSTANTIAL PERIOD OF TIME.  SUCH ACTS

11  MAY INVOLVE A SINGLE COURSE OF CONDUCT OR INDEPENDENT OFFENSES.

12  I THINK THAT THAT IS CERTAINLY SATISFIED IN THIS PARTICULAR

13  CASE.

14          MR. LICATA CAME FROM FLORIDA TO GEORGIA TO ESTABLISH

15  A PAIN CLINIC THAT WAS OPERATING AS A PILL MILL.  THIS WAS IN

16  EARLY 2013.  HE SORT OF TOOK SOME TIME GETTING THE PROCESS

17  STARTED.  EVENTUALLY, WE WOULD SAY AT LEAST BY FEBRUARY, IT WAS

18  UP AND RUNNING ALL THE WAY.  NOW, GRANTED, THE CLINIC MOVED THE

19  BRICK AND MORTAR LOCATIONS SEVERAL TIMES, BUT IT WAS THE SAME

20  CLINIC.  IT OPERATED FROM THAT TIME, EARLY 2013, UP UNTIL IT

21  WAS DISMANTLED ON AUGUST 7TH OF 2014.

22          WITH RESPECT TO APPLICATION NOTE TWO, ENGAGED IN AS A

23  LIVELIHOOD, AND AGAIN I'M READING FROM APPLICATION NOTE TWO.

24          THE COURT:  I'M LOOKING AT IT.

25          MR. BROCKINGTON:  OKAY.  THE DEFENDANT DERIVED INCOME

UNITED STATES DISTRICT COURT

 1   FROM THE PATTERN OF CRIMINAL CONDUCT THAT IN ANY 12-MONTH

 2   PERIOD EXCEEDED 2,000 TIMES THE THEN EXISTING HOURLY MINIMUM

 3   WAGE UNDER FEDERAL LAW.  AND I WILL NOTE THAT THE HOURLY

 4   MINIMUM WAGE IS $7.25 TIMES 2,000 IS $14,500.  IN TERMS OF

 5   FORFEITURE, WE HAD THAT AMOUNT SEIZED FROM ONE PARTICULAR

 6   ACCOUNT, IN EXCESS OF $14,500.

 7           SUBSECTION (B):  THE TOTALITY OF CIRCUMSTANCES SHOWS

 8   THAT SUCH CRIMINAL CONDUCT WAS THE DEFENDANT'S PRIMARY

 9   OCCUPATION IN THAT 12-MONTH PERIOD, LOOKING TO SORT OF THE

10   STATE DEPARTMENT OF REVENUE THAT SHOWS THAT THERE WERE NO WAGES

11   REPORTED IN THE STATE OF GEORGIA BY MR. LICATA DURING THE

12   RELEVANT TIME PERIOD.  AS FOR FLORIDA, IT SHOWS THAT HIS ONLY

13   INCOME WAS FROM LICATA MEDICAL SOLUTIONS, THE AMOUNT OF $3,500,

14   AND IT'S OUR POSITION THAT LICATA MEDICAL SOLUTIONS WAS THE --

15   THAT WAS ESSENTIALLY THE CLINIC.

16           SO AGAIN I'LL STAND WITH THE PROBATION OFFICER AS IT

17   PERTAINS TO THIS PARTICULAR ENHANCEMENT AND I WILL JUST NOTE

18   THAT IT SEEMS TO BE THAT THE FACTS HERE SATISFY THE DEFINITION

19   FROM 4B1.3.

20           THE COURT:  LOOKING AT 4B1.3, I READ IT AND ALSO

21   2D1.1(B)(15).  BASED ON THOSE NOTES AND WHAT I UNDERSTAND ARE

22   THE FACTS IN THIS CASE, MR. ELLIS, I AM GOING TO RESPECTFULLY

23   DISAGREE WITH YOU AND I AM GOING TO OVERRULE YOUR OBJECTION AND

24   I NOTE YOUR EXCEPTION TO MY RULING ON THAT PARTICULAR ONE.

25           THE NEXT ONE IS THE BASE LEVEL MONEY LAUNDERING

1  OBJECTION, MR. ELLIS.

2          MR. ELLIS:  YES, YOUR HONOR.  CALLING THE COURT'S

3  ATTENTION TO PAGE SEVEN OF OUR SENTENCING MEMORANDUM, IT SEEMS

4  TO BE SIMILAR TO THE CASE IN WHICH CHIEF JUDGE THRASH OF THIS

5  DISTRICT WAS REVERSED BY THE ELEVENTH CIRCUIT BECAUSE HE BASED

6  HIS MONEY LAUNDERING ROLE ENHANCEMENT ON THE SAME CONDUCT AS

7  THE DRUG ROLE ENHANCEMENT WAS BASED AND IN FACT THE PSR CLEARLY

8  USED THE EXACT SAME LANGUAGE.

9          THE COURT:  WELL, I THINK WE ARE TALKING ABOUT TWO

10  DIFFERENT THINGS HERE.  YOUR THIRD OBJECTION IS DEALING WITH

11  THE BASE OFFENSE LEVEL FOR MONEY LAUNDERING.  YOU ALL ARE

12  CLAIMING THAT IT SHOULD BE -- HOLD ON A SECOND.

13          MR. ELLIS:  PAGE SEVEN.

14          THE COURT:  YOU ALL ARE CLAIMING IT SHOULD BE A 32

15  AND THEY HAVE IT DOWN AS A LEVEL 38.  I THINK WHAT YOU ARE

16  ARGUING REGARDING CHIEF JUDGE THRASH WAS THE ROLE ENHANCEMENT

17  THAT HE GAVE IN THE MONEY LAUNDERING.

18          MR. ELLIS:  YES, YES, AND THAT'S WHAT WE ARE -- WE

19  ARE NOT OBJECTING TO THE FOUR-LEVEL ROLE ENHANCEMENT IN THE

20  DRUG.  WE STIPULATED TO THAT.

21          THE COURT:  NO, NO.  WHAT I AM SAYING IS THAT THE

22  THIRD OBJECTION IS, I UNDERSTAND YOU ALL ARE OBJECTING THAT THE

23  ADVISORY BASE OFFENSE LEVEL FOR COUNT 22, MONEY LAUNDERING, YOU

24  ALL ARE SAYING IT SHOULD BE LEVEL 32 AND THE GOVERNMENT AND THE

25  PROBATION OFFICER ARE RECOMMENDING A LEVEL 38.


                     UNITED STATES DISTRICT COURT

```
 1            MR. ELLIS:  I BELIEVE SO, YOUR HONOR.

 2            THE COURT:  OKAY.  AND I THINK THAT'S DIFFERENT THAN

 3  THE ROLE IN THE OFFENSE IN WHICH THE GOVERNMENT AND THE

 4  PROBATION OFFICER RECOMMENDED A LEVEL FOUR AND YOU ALL

 5  RECOMMENDED -- YOU ALL RECOMMENDED A ZERO ENHANCEMENT AND THE

 6  GOVERNMENT AND THE PROBATION OFFICER ARE RECOMMENDING A

 7  FOUR-LEVEL ENHANCEMENT.  SO THAT'S TWO DIFFERENT ARGUMENTS.

 8            THE ARGUMENT THAT JUDGE THRASH GOT REVERSED ON THAT

 9  YOU ALL ARE ARGUING DEALS WITH THE ROLE BUT NOT THE ADVISORY

10  BASE OFFENSE LEVEL.  RIGHT NOW WE ARE TALKING ABOUT THE

11  ADVISORY BASE OFFENSE LEVEL, WHICH IS DIFFERENT THAN THE ROLE

12  ENHANCEMENT.

13            MR. ELLIS:  NO.  THE BASE OFFENSE LEVEL IS CORRECTLY

14  A 38.

15            THE COURT:  ALL RIGHT.

16            MR. ELLIS:  TWO LEVELS UP BECAUSE OF A VIOLATION OF

17  18 U.S.C. SECTION 1956.  I'M ON PAGE 44 OF THE PSR.  AND IT'S

18  THE PARAGRAPH 167 THAT WE'VE GOT A PROBLEM WITH THAT BUMPS IT

19  UP.

20            THE COURT:  I WANT TO BE AS FAIR AS POSSIBLE HERE.

21  IT WAS YOUR UNDERSTANDING THAT THEY WERE ASKING FOR A 32,

22  RIGHT?

23            THE PROBATION OFFICER:  THAT IS CORRECT, YOUR HONOR.

24            THE COURT:  NOW, IF YOU ALL WANT THE 38, I AM SURE

25  THE GOVERNMENT WILL GO ALONG WITH THAT, BUT I WANT TO BE AS
```

 1  FAIR AS POSSIBLE.  YOU KNOW, WE THOUGHT YOU ALL SAID IT SHOULD

 2  BE A 32.  BUT IF IT'S A 38 AND THAT'S NOT AN OBJECTION ANYMORE,

 3  WE WILL GO TO THE ROLE ENHANCEMENT.

 4          BUT AGAIN, MR. MORRISON, IS -- MR. ELLIS, I AM NOT

 5  SHOWING ANY DISRESPECT FOR YOU, BUT, MR. MORRISON, IS THAT YOUR

 6  UNDERSTANDING?

 7          MR. MORRISON:  JUDGE, I THINK WE ARE GOING WITH THE

 8  32.

 9          MR. ELLIS:  YEAH.

10          THE COURT:  WELL, THAT'S WHY I WAS ASKING.

11          MR. ELLIS:  CAN WE HAVE TWO MINUTES, YOUR HONOR?

12  BECAUSE --

13          THE COURT:  YES.  GO AHEAD.

14          MR. ELLIS:  -- I DON'T KNOW THAT I EVER ARGUED IN OUR

15  OBJECTIONS.

16          THE COURT:  YOU ALL ARE OBJECTING THAT THE OFFENSE

17  LEVEL SHOULD BE A 32 RATHER THAN A 38, AT LEAST THAT'S WHAT I

18  THOUGHT YOU ALL WERE OBJECTING TO.

19          MR. ELLIS:  NO.  WE ARE JUST OBJECTING TO THE ROLE

20  ENHANCEMENT.

21          THE COURT:  OKAY.  GO AHEAD AND ARGUE THE ROLE

22  ENHANCEMENT.

23          MR. ELLIS:  THE FACT THAT THERE IS NO -- THE ROLE

24  ENHANCEMENT IS THE SAME LANGUAGE THAT'S USED IN THE DRUG

25  DISTRIBUTION COUNT.


                    UNITED STATES DISTRICT COURT

1          THE COURT:  OKAY.

2          MR. ELLIS:  THEY ARE ONE AND THE SAME AND THAT'S WHY

3  THERE SHOULD NOT BE AN UPWARD OR FOUR LEVELS ABOVE THE 38 AND,

4  OF COURSE, PLUS TWO FOR 1956.

5          THE COURT:  OKAY.  THANK YOU, SIR.

6          ALL RIGHT, MR. BROCKINGTON.  LET THE RECORD REFLECT

7  THAT THE DEFENSE IS NOT ARGUING THAT THE MONEY LAUNDERING

8  ADVISORY OFFENSE LEVEL SHOULD BE A 32.  THEY ARE AGREEING IT

9  SHOULD BE A 38.

10          MR. BROCKINGTON:  IN THAT CASE, JUDGE, THEN OUR

11  AGREEMENT WILL SIMPLY BE -- WILL BE LIMITED TO THE ROLE?

12          THE COURT:  YES.

13          ONE SECOND, MR. BROCKINGTON.

14          OKAY.  THEN MR. BROCKINGTON IS ARGUING THE ROLE

15  ENHANCEMENT UNDER PARAGRAPH 167.

16          MR. BROCKINGTON:  YOUR HONOR, WITH RESPECT TO THE

17  OBJECTION TO ROLE IN THE MONEY LAUNDERING OFFENSE --

18          THE COURT:  WHO DID HE SUPERVISE?  I UNDERSTAND THE

19  DRUG DISTRIBUTION.  WHO DID HE SUPERVISE UNDER THE MONEY

20  LAUNDERING?  I UNDERSTAND MS. CARTER, MR. SINGLETARY AND MAYBE

21  CUMMINGS, BUT IN THE MONEY LAUNDERING, WHO ELSE DID HE

22  SUPERVISE?  WHAT ARE THE OTHER TWO PARTICIPANTS THAT WE ARE

23  TALKING ABOUT?

24          MR. BROCKINGTON:  I BELIEVE THAT THE DEFENDANT, WITH

25  RESPECT TO THE MONEY LAUNDERING, THE INFORMATION THAT WOULD

UNITED STATES DISTRICT COURT

1  SUPPORT A ROLE ADJUSTMENT IS SIMPLY THAT --

2           THE COURT:  SHOULDN'T THIS BE A TWO RATHER THAN A

3  FOUR?

4           MR. BROCKINGTON:  I THINK -- I WOULD AGREE THAT IT'S

5  A TWO.

6           THE COURT:  THIS SHOULD BE A TWO, NOT A FOUR.

7           MR. BROCKINGTON:  I DON'T THINK IT SHOULD BE A FOUR.

8  SO I WILL SUSPEND MY ARGUMENT RIGHT THERE IF THE COURT IS IN

9  AGREEMENT THAT IT SHOULD BE A TWO.

10           THE COURT:  ALL RIGHT.  MR. ELLIS, I WILL GIVE YOU A

11  CHANCE TO ARGUE AGAINST THE TWO.

12           THE WAY THE COURT SEES THE FACTS I UNDERSTAND IN THIS

13  CASE, IN THE DEFINITION A TWO IF THE DEFENDANT WAS AN

14  ORGANIZER, LEADER, MANAGER, OR SUPERVISOR OF ANY CRIMINAL

15  ACTIVITY OTHER THAN WHAT IS DESCRIBED IN SECTION A AND B.  IT'S

16  A TWO-LEVEL INCREASE RATHER THAN A FOUR.  I AGREE WITH YOU IT

17  SHOULDN'T HAVE BEEN A FOUR, BUT I CAN SEE WHERE -- IT SHOULDN'T

18  BE A THREE, BUT I CAN SEE WHERE IT SHOULD BE TWO LEVELS BUT NOT

19  A FOUR.

20           MR. ELLIS:  WE THINK, TOO, HE'S GOT TO SUPERVISE

21  SOMEBODY IN THE MONEY LAUNDERING.  WHO DID HE SUPERVISE IN THE

22  MONEY LAUNDERING?

23           THE COURT:  WELL, HE SUPERVISED MS. CARTER.  HE

24  DIRECTED HER ON THE DEPOSITS.  HE DIRECTED MR. SINGLETARY ON

25  DEPOSITS.  THAT'S ALL YOU'VE GOT TO DO IS SHOW THAT HE

UNITED STATES DISTRICT COURT

1    SUPERVISED SOMEBODY.  HE DEFINITELY IS A LEADER.

2            MR. ELLIS:  VERY GOOD, YOUR HONOR.

3            THE COURT:  ALL RIGHT.  I AM GOING TO OVERRULE YOUR

4    OBJECTIONS THERE.

5            SO THE COURT OVERRULES THE OBJECTIONS TO THE

6    CHARACTERISTIC OF POSSESSION OF A FIREARM.  THE COURT OVERRULED

7    THE OBJECTIONS TO CHARACTERISTIC OF PATTERN OF CRIMINAL CONDUCT

8    ENGAGED IN AS A LIVELIHOOD.  THERE WAS NO OBJECTION, EVEN

9    THOUGH THE COURT THOUGHT THERE WAS, TO THE BASE OFFENSE LEVEL

10   FOR MONEY LAUNDERING, SO THAT'S BASICALLY WITHDRAWN.  AND THEN

11   THE COURT AGREED AND SOMEWHAT DISAGREED.  THE COURT SUSTAINED

12   THE OBJECTION AS FAR AS A FOUR-LEVEL ENHANCEMENT BECAUSE THE

13   COURT FOUND THAT IT SHOULD BE A TWO-LEVEL ENHANCEMENT.

14           MS. OSWALD, WILL YOU REDO THE FIGURES FOR ME?

15           THE PROBATION OFFICER:  YES, SIR.  I AM SHOWING THEM

16   WITH MINUS -- WITH JUST PLUS TWO.  THE ADJUSTED OFFENSE LEVEL

17   WOULD NOW BE A 42.

18           THE COURT:  THAT'S FOR COUNT 22?

19           THE PROBATION OFFICER:  FOR COUNT 22.

20           THE COURT:  IT WOULD BE A 42?  I MEAN WHICH ONE ARE

21   YOU TALKING ABOUT?  WHICH COUNT?  ARE YOU TALKING ABOUT COUNT

22   ONE AND TWO?

23           THE PROBATION OFFICER:  ACTUALLY, COUNT 22 WOULD BE A

24   38 PLUS TWO FOR THE 1856 -- OR CONVICTED UNDER 1956.  AND THEN

25   PLUS TWO FOR THE ROLE, WHICH WOULD BE AN ADJUSTED OFFENSE LEVEL

1  OF 42.

2          THE COURT:  AND THAT WOULD BE THE HIGHER?

3          THE PROBATION OFFICER:  BOTH OF THEM WOULD BE THE

4  SAME.

5          THE COURT:  BOTH WOULD BE 42?

6          THE PROBATION OFFICER:  YES, SIR.

7          THE COURT:  OKAY.

8          THE PROBATION OFFICER:  AND THEN A TOTAL OFFENSE

9  LEVEL MINUS THREE WOULD NOW BE 39.

10          THE COURT:  OKAY.  AND WHAT WOULD BE MY CUSTODY

11  GUIDELINE RANGE?

12          THE PROBATION OFFICER:  IF YOU ARE DOING THE MINUS

13  ONE FOR JUDICIAL ECONOMY AND THE MINUS TWO FOR THE TWO-LEVEL

14  VARIANCE IT WOULD NOW BE A 36.

15          THE COURT:  ALL RIGHT.  RIGHT NOW I AM JUST DOING THE

16  ONE FOR THE JUDICIAL ECONOMY.  MR. BROCKINGTON INDICATED THEY

17  WANTED TO TALK MORE ABOUT THE TWO-LEVEL LATER.  SO RIGHT NOW WE

18  HAVE A 38.

19          THE PROBATION OFFICER:  WHICH WOULD BE 235 TO 293.

20          THE COURT:  OKAY.  THANK YOU, MS. OSWALD.

21          ALL RIGHT.  THE COURT WILL NOW READ THE SENTENCING

22  OPTIONS AS FOLLOWS:  COUNT ONE, CONSPIRACY TO DISTRIBUTE

23  CONTROLLED SUBSTANCES AND FOR COUNT TWO, MAINTAINING A DRUG

24  INVOLVED PREMISES, COUNT ONE IS 20 YEARS AND A MILLION-DOLLAR

25  FINE.  COUNT TWO -- COUNT 22 IS CONSPIRACY TO COMMIT MONEY

1  LAUNDERING.  COUNT TWO AND COUNT 22 IS 20 YEARS AND A $500,000

2  FINE.

3          AGAIN, WE PROCEED WITH A BASE OFFENSE LEVEL OF 38, A

4  CRIMINAL HISTORY CATEGORY OF A ONE AND A CUSTODY GUIDELINE

5  RANGE OF 235 TO 293 MONTHS.

6          THE FINE GUIDELINE RANGE, MS. OSWALD, WILL THAT

7  REMAIN THE SAME?

8          THE PROBATION OFFICER:  THAT'S CORRECT.

9          THE COURT:  A FINE GUIDELINE RANGE OF $25,000 TO

10  $2 MILLION.  A SPECIAL ASSESSMENT OF $300.

11          MR. BROCKINGTON, HAS FORFEITURE TAKEN PLACE IN THIS

12  CASE?

13          MR. BROCKINGTON:  IT HAS.  SO THERE'S NOTHING FOR US

14  TO -- IT'S ACTUALLY ALREADY BEEN TAKEN CARE OF, SO NOTHING FOR

15  US TO DO TODAY.

16          THE COURT:  OKAY.  IT'S BEEN ADMINISTRATIVELY TAKEN

17  CARE OF?

18          MR. BROCKINGTON:  IT HAS BEEN, YES.

19          THE COURT:  THANK YOU ALL.

20          COST OF CONFINEMENT IS $30,621 ANNUALLY.  COST OF

21  SUPERVISION IS $3,909 ANNUALLY.  SUPERVISED RELEASE FOR COUNTS

22  ONE AND TWO IS AT LEAST THREE YEARS AND FOR COUNT 22 IS THREE

23  YEARS AND MR. LICATA IS A UNITED STATES CITIZEN.

24          AT THIS TIME, MR. ELLIS, I WILL HEAR ANY ARGUMENT OR

25  EVIDENCE YOU WISH TO PRESENT REGARDING SENTENCING.  I HAVE READ

1  ALL OF THE LETTERS YOU SUBMITTED FROM FRIENDS AND FAMILY

2  MEMBERS AND FROM THE CANCER SOCIETY, BUT I AM HERE TO HEAR

3  ANYTHING YOU WANT TO ARGUE.

4          LET ME SAY THIS:  THE COURT IS -- THE GUIDELINES ARE

5  ADVISORY (A).  (B) ANY RECOMMENDATIONS THAT YOU ALL MAKE ARE

6  NOT -- I AM NOT BOUND BY THEM.  BUT NOW I WILL SAY THIS BEFORE

7  YOU START ARGUING:  THIS AGREEMENT YOU ENTERED SAYS YOU WOULD

8  NOT ARGUE AGAINST THE GUIDELINES.  HOWEVER, THESE GUIDELINES

9  ARE PRETTY HEAVY AND I WOULD LIKE TO HEAR.  IF THE GOVERNMENT

10  IS GOING TO STAND UP AND OBJECT, THEN I WOULD LIKE TO KNOW IT

11  RIGHT NOW, BECAUSE THE AGREEMENT SAYS THAT HE WILL BE SENTENCED

12  AT THE LOW END OF THE GUIDELINES AND MORE OR LESS GO BACK TO IT

13  AGAIN.

14          I DON'T HAVE ANY PROBLEM HEARING ARGUMENT ON IT.  I

15  MAY JUST DO IT EVEN THOUGH THE GOVERNMENT DISAGREES, BUT I'D

16  LIKE TO JUST KIND OF KNOW.  DOES THE GOVERNMENT -- THE PARTIES

17  AGREE NOT TO REQUEST ANY SENTENCE OUTSIDE OF THE GUIDELINE

18  RANGE, NOR ANY GUIDELINE ADJUSTMENT FOR ANY REASON THAT IS NOT

19  SET FORTH IN THE PLEA AGREEMENT.

20          MR. ELLIS MAY ALSO TAKE A DIFFERENT POSITION THAN

21  MR. BROCKINGTON, SO I NEED TO KNOW BEFORE MR. ELLIS STARTS

22  ARGUING AND PRESENTING EVIDENCE IS THE GOVERNMENT GOING TO BE

23  OBJECTING.

24          NOW, LET ME JUST SAY THIS BEFORE YOU START, BEFORE

25  YOU SAY ANYTHING.  THESE ARE SOME STRONG SENTENCES HERE SO I

1  ALWAYS LIKE TO MAKE SURE WHEN PEOPLE ARE LOOKING AT SOMETHING

2  THAT WILL CONFINE THEIR FREEDOM A LONG TIME PERIOD OF TIME THEY

3  GET A CHANCE TO TELL ME EVERYTHING THEY WANT TO TELL ME AND

4  ARGUE EVERYTHING THEY CAN TO CHANGE MY MIND.  BUT WITH THAT

5  STATED, TELL ME WHAT YOUR POSITION IS.

6           MR. BROCKINGTON:  I MEAN MY POSITION IS WE WERE GOING

7  TO -- WE ENTERED INTO AN AGREEMENT WITH MR. LICATA.  WE

8  WOULDN'T DO ANYTHING OUTSIDE OF THAT AGREEMENT.  I MEAN THAT'S

9  ESSENTIALLY MY POSITION.

10          THE COURT:  SO ARE YOU GOING TO OBJECT TO THEM

11 PRESENTING ANY EVIDENCE OR ARGUMENT AGAINST THE GUIDELINES?

12          MR. BROCKINGTON:  I MEAN I THINK THAT -- I MEAN YOUR

13 HONOR SAID THAT HE IS NOT BOUND BY --

14          THE COURT:  I'M NOT BOUND BY IT.

15          MR. BROCKINGTON:  -- BY IT, SO I DON'T THINK THAT --

16 I THINK, I MEAN, I CAN SEE THE DIFFERENCE BETWEEN SORT OF

17 REQUESTING A SENTENCE AND THEN PUTTING ALL OF THE 3553(A)

18 FACTORS OUT THERE.

19          I INVITE MR. ELLIS OR WHOEVER, MR. MORRISON OR

20 MR. HADDAD, TO STAND UP AND PROVIDE ALL OF THE 3553(A) FACTORS

21 THAT THEY WOULD LIKE TO PROVIDE.  SORT OF THAT WOULD, YOU KNOW,

22 MITIGATE AGAINST WHATEVER SENTENCE THAT THEY WANT, BUT AT THE

23 END OF THE DAY, I MEAN THE REQUEST IS THE REQUEST.

24          THE COURT:  LET ME SAY THIS, MR. BROCKINGTON:  I

25 UNDERSTAND THAT THE GOVERNMENT FEELS THAT THEY HAD AN AGREEMENT

1   FOR THE DEFENSE NOT TO ARGUE OUTSIDE OF WHAT THE GUIDELINE

2   SHOWED AND I AM NOT FAULTING YOU OR DISAGREEING SO MUCH WITH

3   YOU ON THAT.  I UNDERSTAND THE AGREEMENT.

4           HOWEVER, AS I INDICATE IN EVERY PLEA THAT I TAKE AND

5   AS I INDICATE HERE, THIS IS A RECOMMENDATION I AM NOT BOUND BY.

6   I THINK IN THIS CASE I AM GOING TO GIVE THEM THE OPPORTUNITY TO

7   ARGUE FOR A SENTENCE OUTSIDE THE GUIDELINES.  I AM NOT SAYING

8   HOW I AM GOING TO RULE ONE WAY OR THE OTHER.  AND THE REASON

9   WHY I AM GOING TO DO IT IS FOR A NUMBER OF REASONS.

10          FIRST OF ALL, LAST WEEK I SENTENCED SIX PEOPLE - YOU

11  HANDLED THE CASE - WITH RECORDS WORSE THAN MR. LICATA.  NOW,

12  THEY HAD LIKE THE EQUIVALENT OF 20,000 KILOGRAMS OF MARIJUANA.

13  MR. LICATA HAS SOMETHING LIKE THE EQUIVALENT OF 3900 KILOGRAMS

14  OF MARIJUANA.  AND, YOU KNOW, NOBODY IN THAT CASE -- AND ONE OF

15  THEM HAD THREE PRIOR FEDERAL CONVICTIONS AND ANOTHER ONE HAD

16  ONE PRIOR FEDERAL CONVICTION.  AND I THINK ONE OF THEM GOT 132

17  MONTHS AND THE OTHER ONE GOT 120 MONTHS.

18          AND WE HAVE MR. LICATA HERE AND HE HAS A CRIMINAL ONE

19  CRIMINAL HISTORY CATEGORY AND HE HAD 3900 KILOGRAMS EQUIVALENCE

20  OF MARIJUANA.  IN OTHER WORDS, WHAT I AM SAYING IS THAT HE IS

21  LOOKING AT, IF I GO WITH THE RECOMMENDATION, OF LESS OF THE

22  LOWER END OF 235 MONTHS.  AND THE CASES ARE NOT THE SAME, BUT I

23  THINK IT COULD BE ARGUED THAT THIS CASE AND THE FACTS ARE A

24  LITTLE BIT LESS THAN THE CASE WITH SOMEBODY THAT GOT A

25  RECOMMENDATION OF 108 MONTHS FROM THE GOVERNMENT.

```
 1           MR. BROCKINGTON:  NO.  I MEAN I -- I AGREE WITH THE
 2    COURT.  I AM NOT GOING TO OBJECT TO ANY 3553(A) ARGUMENT THAT
 3    MR. ELLIS MAKES ON BEHALF OF MR. LICATA.
 4           I CERTAINLY DON'T WANT TO SPLIT HAIRS AND I
 5    UNDERSTAND THAT IT MAY BE, IT MAY BE SORT OF SHADES OF GRAY IN
 6    TERMS OF I AM GOING TO DESCRIBE THE 3553(A) FACTORS THAT WOULD
 7    SUPPORT, YOU KNOW, A VARIANCE BUT THEN COME IN AND NOT ACTUALLY
 8    REQUEST IT.  I UNDERSTAND THAT PERHAPS WE SHOULD JUST DISPENSE
 9    WITH THAT.  I AM NOT GOING TO OBJECT, SO --
10           THE COURT:  I APPRECIATE THAT AND I THINK YOU ARE
11    BEING FAIR, MR. BROCKINGTON, AND YOU ALWAYS -- IN ALL THE CASES
12    I'VE HAD WITH YOU, YOU HAVE ALWAYS BEEN FAIR.
13           AND I AM NOT SAYING THAT I HAVE MADE MY MIND UP THAT
14    I AM NOT GOING TO GO WITH THE GUIDELINES, BUT I WANT TO GIVE
15    THEM A CHANCE TO ARGUE THAT I SHOULDN'T FOLLOW THE GUIDELINES
16    AND I SHOULD VARY DOWN TO WHAT THEY THINK I SHOULD.  OBVIOUSLY,
17    I THINK THEY ARE GOING TO ASK FOR 121 MONTHS, BUT OBVIOUSLY THE
18    GOVERNMENT MAY COME BACK AND CONVINCE ME TO DO SOMETHING
19    DIFFERENT.  SO THIS IS KIND OF LIKE BEING A SUPERIOR COURT
20    JUDGE AGAIN.  IT'S WIDE OPEN.
21           MR. BROCKINGTON:  I AGREE AND I UNDERSTAND AND I CAN
22    ANTICIPATE THAT YOU WILL PROBABLY HEAR FAVORABLE THINGS ABOUT
23    MR. LICATA FROM THIS SIDE AS WELL, OKAY?
24           THE COURT:  EXACTLY.
25           MR. BROCKINGTON:  SO I CERTAINLY WOULDN'T WANT TO DO
```

1   THAT AND THEN NOT ALLOW HIM THE OPPORTUNITY TO SAY THE SAME

2   THING ON HIS OWN BEHALF.  SO WE WILL HAVE NO OBJECTION.

3           THE COURT:  THANK YOU, MR. BROCKINGTON.

4           MR. BROCKINGTON:  YOU'RE WELCOME.

5           THE COURT:  ALL RIGHT, MR. ELLIS OR MR. MORRISON.

6           MR. MORRISON:  WE HAVE SHIFTED BACK, JUDGE.

7           THE COURT:  SHIFTED BACK.

8           MR. ELLIS IS ON A ROLL, MR. MORRISON.

9           MR. MORRISON:  HE UNDERSTANDS THE LAW, JUDGE.  I

10  UNDERSTAND THE FACTS.

11          THE COURT:  ALL RIGHT.

12          MR. MORRISON:  JUDGE, I AM GOING TO MAKE A SIMPLE

13  ARGUMENT.  THERE IS ABSOLUTELY NO JUSTIFICATION AT ALL FOR

14  GIVING MR. LICATA A SENTENCE LONGER, TWICE AS LONG, THREE TIMES

15  AS LONG AS EITHER RANDY OR LARRY WEBMAN.  I MEAN IT JUST -- YOU

16  CAN'T MAKE THAT ARGUMENT IN GOOD FAITH, NOT THAT

17  MR. BROCKINGTON WOULD EVER ARGUE SOMETHING IN BAD FAITH.  BUT,

18  YOU KNOW, THOSE SENTENCES WERE FOR INDIVIDUALS WHO HAD PRIOR

19  FEDERAL FRAUD CONVICTIONS WHERE THEY HAD SERVED TEN YEARS IN

20  FEDERAL PRISON AND ONE EVEN HAD EVEN MORE THAN THAT.

21          SO OUR POSITION IS, IS THAT TO AVOID UNWARRANTED

22  SENTENCING DISPARITIES, WHICH THE COURT IS DIRECTED TO DO --

23  AND THAT'S NOT JUST WITHIN THIS CASE.  THAT'S ACROSS EVERY

24  CASE.  IF YOU COMBINE THAT WITH THE STATISTICS THAT WE INCLUDED

25  IN OUR MOTIONS SHOWING WHAT THE MEDIAN SENTENCES ARE ACROSS THE

1   COUNTRY, I MEAN I THINK A SENTENCE SOMEWHERE BETWEEN 120 AND

2   132 IS ALL THAT CAN BE JUSTIFIED ON THIS RECORD.

3          I MEAN THE COURT HAS ALREADY NOTED THE DIFFERENCES

4   HERE, YOU KNOW.  LESS DRUGS AND NO CRIMINAL HISTORY.  THAT'S

5   SIGNIFICANT.  YOU KNOW, WE EVEN GOT A LIVELIHOOD ENHANCEMENT.

6          THANK YOU.

7          THE COURT:  THANK YOU, MR. MORRISON.

8          MR. BROCKINGTON?

9          MR. BROCKINGTON:  YOUR HONOR, BEFORE WE BEGIN WITH

10  THE SENTENCING RECOMMENDATION, I DO WANT TO NOTE VERY GENERALLY

11  MR. LICATA'S COOPERATION IN THIS CASE.

12         PURSUANT TO PAGE -- IN PARAGRAPH 22 ON PAGE 11 OF HIS

13  PLEA AGREEMENT THE GOVERNMENT AGREED TO MAKE KNOWN THE EXTENT

14  OF THE COOPERATION TO THE SENTENCING COURT.  I AM NOT GOING TO

15  GO TO THE FULL EXTENT, BUT I WILL SORT OF GENERALLY SAY THAT

16  MR. LICATA HAS PROVIDED --

17         THE COURT:  DO YOU NEED THE COURTROOM CLEARED?

18         MR. BROCKINGTON:  I DON'T THINK IT'S REALLY GOING TO

19  MAKE A DIFFERENCE.  THAT'S SORT OF THE REASON WHY I'M JUST

20  GOING TO BE GENERAL.  AND I'VE TALKED TO MR. MORRISON ABOUT

21  THIS.  I THINK WE ARE IN AGREEMENT HERE.

22         HE HAS PROVIDED SEVERAL CANDID PROFFER INTERVIEWS

23  WITH THE GOVERNMENT AND HE DID THAT RIGHT AWAY.  SO MUCH SO

24  THAT ALTHOUGH MR. LICATA WAS DETAINED DOWN IN FLORIDA AND

25  UNFORTUNATELY HAD TO MISS HIS WEDDING, THE GOVERNMENT


UNITED STATES DISTRICT COURT

1    EVENTUALLY AGREED TO A BOND FOR MR. LICATA.  HE WAS ABLE TO

2    COME OUT.  SO NOT ONLY WHILE HE WAS INCARCERATED DID HE PROVIDE

3    AN INTERVIEW BUT SUBSEQUENT TO THAT, TRAVELING BACK TO ATLANTA

4    TO DO SO.

5            HE HAS PROACTIVELY PROVIDED THE GOVERNMENT WITH

6    INFORMATION, WITH PHYSICAL EVIDENCE AND WITH CORRESPONDENCE.

7    THAT'S NOT NECESSARILY AT YOUR PRODDING.  HE HAS DONE THAT ON

8    HIS OWN.  AND WE STILL HAVE TWO REMAINING DEFENDANTS IN THIS

9    PARTICULAR CASE AND I WOULD SUSPECT THAT THE GOVERNMENT MAY

10   CALL ON MR. LICATA IN THE FUTURE.  SO AGAIN I JUST WANTED TO

11   PUT THAT JUST VERY GENERALLY OUT THERE IN TERMS OF MR. LICATA'S

12   COOPERATION.

13           LOOKING TO SORT OF THE 3553(A) FACTORS, MR. MORRISON

14   SAID THAT HE WAS FAMILIAR WITH THE FACTS BUT LET'S KIND OF GO

15   OVER SOME OF THEM JUST, YOU KNOW, JUST BRIEFLY.  I UNDERSTAND

16   YOUR HONOR IS VERY FAMILIAR WITH THE FACTS HERE.

17           THE NATURE AND CIRCUMSTANCES OF THE OFFENSE.  THAT'S

18   SORT OF THE FIRST 3553(A) FACTOR THAT WE LOOK TO.  AGAIN, AS I

19   MENTIONED EARLIER, DEFENDANT SORT OF IN LATE 2012 MADE PLANS TO

20   COME TO ATLANTA TO START A PILL MILL.  I MEAN THERE WAS NO --

21   LIKE I SAY, I REFER TO THIS AS AN OSTENSIBLE PAIN CLINIC BUT WE

22   CAN KIND OF DISPENSE WITH THAT.  THIS IS A PILL MILL.

23           THE GOAL WAS TO EARN REVENUE THROUGH THE ILLICIT

24   PRESCRIBING OF SCHEDULE II CONTROLLED SUBSTANCES.  THESE WERE

25   NOT LEGITIMATE PATIENTS THAT WERE COMING IN.  A LOT OF TIMES WE

UNITED STATES DISTRICT COURT

1 HEAR THAT, OH, WELL, YOU HAVE SOME LEGITIMATE PATIENTS AND

2 YOU'LL HAVE SOME PILL SEEKERS OR DRUG DEALERS.

3        YOUR HONOR, LEGITIMATE PATIENTS DON'T DRIVE FOR HOURS

4 TO COME TO A CLINIC, WHERE THEY HAVE TO STAND OUTSIDE WHERE

5 PEOPLE ARE SMOKING CIGARETTES AND PEOPLE ARE ACTIVELY SELLING

6 PILLS, ONLY TO THEN GO INTO A WAITING ROOM WHERE IT'S OVERLY

7 CROWDED AND WAIT TIMES ARE FOUR, FIVE, SIX HOURS A DAY ONLY TO

8 THEN HAVE TO PAY CASH AND THEN, IF THEY ARE FROM OUT OF STATE,

9 MAYBE EVEN MORE TO SEE A PHYSICIAN WHO THEN INSULTS THEM

10 PHYSICALLY.  YOU KNOW, INSULTS THEM, BERATES THEM, DOESN'T

11 PROVIDE A LEGITIMATE EXAM, ONLY TO THEN TAKE THAT PRESCRIPTION

12 AND NOT BE ABLE TO -- HAVE DIFFICULTY FILLING IT WHEREVER, IN

13 THEIR HOME PHARMACY.

14        SO THAT IS SORT OF THE BACKDROP THAT WE HAVE HERE.

15 THIS IS NOT, YOU KNOW, A LEGITIMATE PAIN CLINIC WHERE ON THE

16 SIDE WE HAVE SOME PILL SEEKERS.

17        YOUR HONOR IS FAMILIAR WITH SORT OF HOW THIS CASE

18 STARTED BECAUSE YOUR HONOR IS FAMILIAR WITH DR. BATTISTA.  THE

19 DEFENDANT ACTUALLY RECRUITED DR. BATTISTA DOWN IN FLORIDA TO

20 COME TO ATLANTA TO WORK AT THIS PILL MILL AND DR. BATTISTA

21 ACTUALLY WAS THE FIRST PRESCRIBING PHYSICIAN AT THE CLINIC WHEN

22 IT WAS CALLED CHIRON.  THIS WAS 3149 EAST SHADOWLAWN AVENUE IN

23 BUCKHEAD.

24        NOW, DR. BATTISTA WENT ROGUE.  YOUR HONOR IS FAMILIAR

25 WITH THAT.  WE CAME IN AND WE HAD A -- YOU KNOW, THE GOVERNMENT

1  PROSECUTED DR. BATTISTA.  NEVERTHELESS, THE DEFENDANT CONTINUED

2  TO OPERATE THE CLINIC SORT OF VERY OPENLY, EVEN GOING SO FAR AS

3  TO BE INTERVIEWED BY CHANNEL 2 NEWS WHEN THEY WERE LOOKING FOR

4  DR. BATTISTA AND ESSENTIALLY PUT ALL THE BLAME ON DR. BATTISTA.

5         SO AFTER THE FOCUS SWITCHED FROM DR. BATTISTA BACK TO

6  THE CLINIC, AGENTS WANTED TO KNOW IF THIS WAS STILL IN

7  OPERATION AND IT WAS, AT THIS POINT UNDER THE NAME OF EXPRESS

8  HEALTH.

9         ULTIMATELY THE CLINICS MOVED THREE TIMES.  THERE WAS

10  ONE TIME TO DORAVILLE ON WINTERS CHAPEL ROAD, ONE TIME TO

11  LAWRENCEVILLE ON SUGARLOAF PARKWAY.  BUT AT THE END OF THE DAY

12  IF I REFER TO THE CLINIC, IT'S THE SAME OPERATION JUST IN THREE

13  DIFFERENT BRICK AND MORTAR LOCATIONS.

14         I SORT OF WANT TO START THAT ONE DIFFERENCE BETWEEN

15  THE CASE THAT WE HEARD ON THURSDAY AND TODAY IS SORT OF THE

16  OVERWHELMING EVIDENCE THAT WE HAVE IN THIS PARTICULAR CASE.

17  THERE WAS A COURT-AUTHORIZED TITLE III INTERCEPT IN PLACE FOR

18  60 DAYS.  AND I CAN TELL YOU THAT THE PERTINENT CALLS THAT WERE

19  INTERCEPTED ON THIS PARTICULAR TWO-MONTH WIRE WERE VOLUMINOUS

20  WHEN YOU LOOK AT THE LINE SHEETS.  THERE WERE A NUMBER OF

21  CONVERSATIONS THAT WERE INTERCEPTED OF MR. LICATA, WHO WAS VERY

22  PLAINLY AND VERY OPENLY OPERATING WHAT HE KNEW TO BE AN ILLEGAL

23  PAIN CLINIC.

24         IN TERMS OF THE PHYSICIANS THAT WORKED THERE,

25  MR. LICATA HIRED DOCTORS WHO WOULD ILLEGALLY PRESCRIBE SCHEDULE

UNITED STATES DISTRICT COURT

1  II CONTROLLED SUBSTANCES.  LIKE I SAID, THAT WAS THE GOAL OF

2  THIS PARTICULAR PAIN CLINIC.

3           WE INTERCEPTED CALLS WHERE HE WAS CRITICAL OF OTHER

4  PHYSICIANS.  THERE WERE OTHER PHYSICIANS THAT WORKED THERE,

5  CERTAINLY.  YOU'LL HEAR -- YOU HAVE PROBABLY SEEN A DR. TAN,

6  CARLOS TAN THAT WAS REFERENCED IN THE PSR, OR DR. JAMES MURTAGH

7  THAT WAS IN THE PSR.  THOSE DOCTORS DIDN'T BECOME PART OF THIS

8  CASE AND SOME OF THE REASON IS BECAUSE THEY SIMPLY DIDN'T WORK

9  THERE OR DIDN'T PRESCRIBE ILLEGALLY FOR A LONG ENOUGH TIME.

10 BUT WE INTERCEPTED PHONE CALLS WHERE THE DEFENDANT WAS CRITICAL

11 OF DR. TAN FOR NOT OVERPRESCRIBING.

12          ON THE FLIP SIDE THERE ARE INTERCEPTED CALLS WITH

13 DR. ROLAND, A CO-DEFENDANT IN THIS CASE, WHERE THE DEFENDANT IS

14 OPENLY DISCUSSING THE OPERATION OF THE CLINIC WITHOUT A

15 LICENSE.  THROUGHOUT THE COURSE OF THE OPERATION OF THIS CLINIC

16 MR. LICATA WAS AWARE OF THE DIVERSION OF THESE SCHEDULE II

17 CONTROLLED SUBSTANCES AND HE ENCOURAGED IT.

18          IN TERMS OF THE DIVERSION OF THE PILLS, DIVERSION IS

19 SIMPLY WHEN THESE PRESCRIPTION PILLS SORT OF GO OUTSIDE THE

20 LEGITIMATE CHAIN, SO GOING FROM DRUG MANUFACTURER ALL THE WAY

21 TO THE ACTUAL USER OF THE PILL.  IF IT DOESN'T GO TO A

22 DISTRIBUTOR, TO A PHARMACY, THEN ISSUED WITH A LEGITIMATE

23 PRESCRIPTION AND THEN TAKEN BY THE HOLDER OF THAT PRESCRIPTION,

24 ANYTIME IT KIND OF GOES OFF THE PATH THERE IS DIVERSION.  AND

25 WE SAW THAT HERE.  NOT ONLY DID WE SEE THAT HERE BUT THERE IS

1  ALSO CO-DEFENDANTS WHO WERE INDICTED IN THIS CASE WHO WERE IN

2  THERE SOLELY BECAUSE OF THEIR SPONSORSHIP ROLE AND THEIR

3  DIVERSION OF THE PILLS.

4        AGAIN, LIKE I SAID, THERE WERE NUMEROUS CALLS THAT

5  WERE INTERCEPTED ON THE TITLE III WIRETAP.  AND THERE WERE

6  CALLS WITH DEFENDANT AND CO-DEFENDANTS THAT WOULD BE ARRANGING

7  FOR TIMES FOR THESE CO-DEFENDANTS, THESE SPONSORS, TO BRING IN

8  THEIR PATIENTS.  AGAIN, YOU'VE HEARD ME REFER TO THESE AS

9  PATIENTS BUT THEY ARE MORE ACCURATELY DESCRIBED AS CUSTOMERS.

10        THE COURT:  LIKE WEBMAN.

11        MR. BROCKINGTON:  YES, EXACTLY LIKE WEBMAN.

12        AND WHEN I SAY "SPONSOR," JUDGE, WHAT I MEAN IS THEY

13  ARE INDIVIDUALS, ACTUALLY CO-DEFENDANTS IN THIS CASE,

14  MR. CUMMINGS, MR. THOMPSON, MR. FERGUSON AND MR. GADD, WHO THE

15  GOVERNMENT HAS DESCRIBED AS SPONSORS.  WHAT WE MEAN WHEN WE SAY

16  THAT IS THESE ARE INDIVIDUALS WHO WOULD FUND THE VISITS OF

17  OTHER PATIENTS.  THE SLANG TERM HERE COULD BE "SMURFS."  BUT

18  ESSENTIALLY THEY ARE GOING TO PAY FOR OTHER CUSTOMERS' VISITS

19  TO THE CLINIC, THEN PAY TO HAVE THOSE PRESCRIPTIONS FILLED AND

20  THEN EITHER PAY THAT SMURF IN CASH OR IN PILLS AND TAKE THE

21  REST OF THOSE PILLS AND SELL THEM AT A PROFIT AND THEN

22  CONTINUE.

23        SO THAT'S WHERE WE SEE THE DISTRIBUTION OF THESE

24  PARTICULAR PILLS ON A STREET LEVEL.  WE HAVE THAT AS

25  CO-CONSPIRATORS IN THIS CASE.  SO WE SHOULDN'T LOOK AT THIS AS

1  JUST SIMPLY PIECES OF PAPER TAKEN FROM A PRESCRIPTION PAD AND

2  THEN GO OFF INTO THE SUNSET AND WE DON'T KNOW WHAT HAPPENS.

3          OTHER CALLS ON THE -- OH, WITH RESPECT TO THOSE

4  SPONSORS, AGAIN I REFERENCED SOME OF THOSE NAMES.  THERE WERE

5  INTERCEPTED CALLS WITH A MR. DANNY THOMPSON, SEVERAL CALLS --

6  WHEN I SAY SEVERAL, I ACTUALLY PROBABLY MEAN WE ARE TALKING

7  ABOUT 10, 20, 30, PROBABLY, DIFFERENT CALLS WHERE THE

8  CO-DEFENDANT, MR. THOMPSON, AND THE DEFENDANT, MR. LICATA, ARE

9  DISCUSSING THE DIVERSION OF THESE PILLS AND DISCUSSING

10 SPONSORSHIP.

11         BY WAY OF EXAMPLE, MR. THOMPSON WOULD CALL AND SAY

12 I'M BRINGING IN SIX TODAY.  I'M BRINGING IN FOUR TODAY.

13 ESSENTIALLY, I'M BRINGING IN PATIENTS.  THESE ARE PATIENTS THAT

14 ESSENTIALLY MR. THOMPSON WOULD SPONSOR AND ULTIMATELY WOULD

15 HAVE THEIR PRESCRIPTIONS FILLED AND THEN WOULD SELL THEM.  WE

16 KNOW THIS BECAUSE THERE ARE SEVERAL CALLS WHERE MR. THOMPSON IS

17 CALLING MR. LICATA UPSET ABOUT THE FACT THAT DR. ROLAND WOULD

18 ONLY PRESCRIBE HIS PARTICULAR PATIENTS PERCOCET AND NOT

19 OXYCODONE.

20         NOW, PERCOCET CONTAINS OXYCODONE BUT WHAT THEY WERE

21 BEING PRESCRIBED WAS 10/325.  IT'S ESSENTIALLY 10 MILLIGRAMS OF

22 OXYCODONE, 325 MILLIGRAMS OF ACETAMINOPHEN.  NOW, FOR THE

23 NORMAL PERSON THAT WILL WORK TO HELP SOMEONE'S PAIN.  BUT IF

24 YOU ARE AN ADDICT, IT'S REALLY NO GOOD, AND THE REASON WHY

25 MR. THOMPSON IS UPSET THAT HIS PATIENTS, HIS CUSTOMERS, HIS

1    GUYS WERE BEING PRESCRIBED PERCOCET IS BECAUSE THE RESALE VALUE

2    SORT OF ON THE STREET FOR PERCOCET IS VERY LOW.  SO IF HE IS

3    PRESCRIBED PERCOCET, HE CAN'T MAKE ENOUGH MONEY TO COVER, TO

4    FUND THE TRIPS DOWN TO ATLANTA.  AND I WILL NOTE THAT

5    MR. THOMPSON IS FROM KENTUCKY.  MR. THOMPSON IS NOT FROM

6    GEORGIA.  MR. THOMPSON WAS FILLING HIS PILLS FROM KANSAS, NOT

7    IN KENTUCKY OR GEORGIA.

8            WITH RESPECT TO MR. CUMMINGS, THERE ARE TELEPHONE

9    CALLS BETWEEN MR. LICATA AND MR. CUMMINGS WHERE MR. CUMMINGS

10   TALKS ABOUT BRINGING IN SOME OF HIS PEOPLE.  MR. CUMMINGS

11   WAS -- AND I'LL NOTE THAT MR. THOMPSON, MR. CUMMINGS AND

12   MR. GADD, ALL THESE SPONSORS WERE ALLOWED TO FRONT THEIR

13   VISITS.  THAT'S SORT OF A STREET TERM THAT WE USE, A STREET

14   DRUG TERM, "FRONT," BUT ESSENTIALLY THEY DIDN'T EVEN HAVE TO

15   PAY UP FRONT.  SO MR. THOMPSON COULD BRING HIS PEOPLE DOWN,

16   COULD BE SEEN BY THE CLINIC AND THEN MR. THOMPSON WOULD JUST

17   DEPOSIT FUNDS INTO AN ACCOUNT LATER ON.  SO THAT'S SORT OF THAT

18   IDEA OF FRONTING DRUGS LIKE WE SEE SORT OF IN THE STREET REALM.

19   SO THAT'S WHERE YOU CAN SEE WHERE THE STREET DRUG ARENA AND

20   THIS PILL MILL SORT OF -- THEY CROSS.

21           GOING BACK TO MR. CUMMINGS, THERE ARE INTERCEPTED

22   TELEPHONE CALLS WHERE MR. CUMMINGS SAYS THAT HE WILL PAY

23   MR. LICATA AFTER HE, QUOTE, "BUSTS SOME SCRIPTS."  THE

24   GOVERNMENT'S POSITION IS THAT "BUST SOME SCRIPTS" ESSENTIALLY

25   MEANS FILL PRESCRIPTIONS AND SELL THEM, THE PILLS, AT A PROFIT.

1          WITH RESPECT TO MR. GADD, THERE ARE INTERCEPTED PHONE

2    CALLS WHERE MR. LICATA WAS ACCEPTING COCAINE AS PAYMENT FOR

3    VISITS RATHER THAN ACTUAL FUNDS.

4          OTHER TELEPHONE CALLS THAT WERE INTERCEPTED, I WILL

5    NOTE IN PARAGRAPH 80 OF THE PSR THE DEFENDANT ADMITS TO NOT

6    OPERATING LEGALLY.  THIS THROUGH TELEPHONE CALLS.  LIKE I SAID,

7    VERY OPEN ON THESE TELEPHONE CALLS WHERE HE WOULD MAKE THOSE

8    ADMISSIONS.  HE ALSO ADMITTED THAT HE MARKETED TO DRUG DEALERS

9    IN DISCUSSIONS WITH FOLKS.

10          WITH RESPECT TO SORT OF THOSE PILL MILL RED FLAGS

11    THAT WE TALKED ABOUT, CASH PAYING BUSINESSES -- CASH PAYING

12    CUSTOMERS, EXCUSE ME, OUT-OF-STATE PATIENTS, THERE ARE

13    INTERCEPTED TELEPHONE CALLS WHERE THE DEFENDANT ADMITS THAT THE

14    KENTUCKY PATIENTS ARE SORT OF HIS BREAD AND BUTTER.  THOSE

15    PATIENTS WERE IDEAL.  THERE ARE OTHER INTERCEPTED TELEPHONE

16    CALLS WITH CO-DEFENDANTS WHERE THE DEFENDANT DISCUSSES

17    OBTAINING FAKE IDENTIFICATIONS, FAKE GEORGIA IDENTIFICATIONS

18    FOR THESE KENTUCKY PATIENTS.  AGAIN, THE REASON FOR THAT IS TO

19    THWART LAW ENFORCEMENT.

20          WITH RESPECT TO THE MONEY LAUNDERING AND THE -- WITH

21    RESPECT TO THE MONEY LAUNDERING, YOUR HONOR, THERE WERE A

22    NUMBER OF DEPOSITS THAT WERE MADE, CASH DEPOSITS, NOT JUST BY

23    THE DEFENDANT AND CO-DEFENDANTS IN GEORGIA BUT ALSO

24    CO-DEFENDANTS ABROAD THAT WERE ESSENTIALLY IN FLORIDA AND IN

25    KENTUCKY THAT WOULD DEPOSIT FUNDS DIRECTLY INTO THE CORPORATE

1    ACCOUNT.  SO THIS IS NOT WHERE THEY PAY FOR THEIR VISIT, SEE

2    THE DOCTOR.  THESE VISITS WOULD BE FOR FREE AND THEN WOULD BE

3    PAID FOR LATER.

4            I WILL NOTE THAT AGAIN WE MENTIONED THIS DURING THE

5    LIVELIHOOD, BUT THERE WERE NO REPORTED WAGES BY MR. LICATA IN

6    GEORGIA.  AND IN TERMS OF HIS INCOME IN FLORIDA, IT WAS LIMITED

7    TO LICATA MEDICAL SOLUTIONS, WHICH WAS THE NAME ON THE

8    CORPORATE ACCOUNT FOR THE PARTICULAR CLINIC.

9            WITH THAT SAID, I WILL MOVE ON TO THE HISTORY AND

10   CHARACTERISTICS OF THIS PARTICULAR DEFENDANT, WHICH I WOULD

11   AGREE WOULD MITIGATE AGAINST SORT OF AS HIGH A SENTENCE AS THE

12   NATURE AND CIRCUMSTANCES OF THE OFFENSE MAY DICTATE.

13           THIS PARTICULAR DEFENDANT HAS NO CRIMINAL HISTORY.

14   HE IS A CRIMINAL HISTORY CATEGORY ONE, DISTINCT FROM THE FOLKS

15   WHO WE SAW LAST WEEK.  AGAIN, MR. LICATA ACCEPTED

16   RESPONSIBILITY ALMOST IMMEDIATELY AND AGAIN HE WAS WILLING TO

17   COME IN AND TALK WITH US NOT JUST WHILE HE WAS INCARCERATED BUT

18   AFTER HE WAS RELEASED AS WELL.

19           SO WITH RESPECT TO THE TWO-LEVEL VARIANCE THAT WE

20   DISCUSSED EARLIER, THAT IS A RECOMMENDATION THAT THE GOVERNMENT

21   HAS WHERE WE UNDERSTAND THAT THE GUIDELINE RANGE IS HIGH IN

22   THIS CASE.  AND AS COMPARED TO OTHER CASES IN THIS PARTICULAR

23   DISTRICT IN THIS COURTROOM THAT WE HAVE SEEN THIS WEEK, WE FELT

24   AS THOUGH A VARIANCE WAS APPROPRIATE.

25           SO THOSE ARE THE REQUESTED VARIANCES THAT WE TALKED

1  ABOUT IN PARAGRAPH 17 WHERE WE SAY THAT WE ARE GOING TO

2  RECOMMEND LOW END OF THE GUIDELINE RANGE AFTER THE REQUESTED

3  VARIANCES.  WE ACKNOWLEDGE THAT THIS CASE AND THAT THESE

4  GUIDELINES ARE HIGH FOR MR. LICATA WHEN YOU CONSIDER THE

5  OFFENSE AND THEN WHEN YOU CONSIDER THE HISTORY AND

6  CHARACTERISTICS OF THIS DEFENDANT.  THAT'S WHERE THOSE TWO

7  LEVELS COME IN.  I CERTAINLY COULD HAVE MADE THIS ARGUMENT

8  BEFORE, BUT I FELT LIKE IT WAS MORE APPROPRIATE TO DISCUSS NOW,

9  SO WE ARE MAKING THAT TWO-LEVEL DOWNWARD VARIANCE

10 RECOMMENDATION THERE.

11         I DIDN'T WANT TO MAKE THIS A CASE ABOUT THE WEBMANS.

12 I CERTAINLY DON'T.  I MEAN I THINK THIS IS SORT OF UNIQUE.  BUT

13 IN TERMS OF AVOIDING SORT OF UNWANTED SENTENCING DISPARITIES, I

14 THINK IT MAY BE APPROPRIATE, ESPECIALLY SINCE MR. MORRISON AND

15 I WERE JUST IN HERE ON THURSDAY.

16         MR. LICATA, IN HIS OPERATION OF THE PILL MILL, WAS

17 CERTAINLY DIFFERENT FROM THE WEBMANS.  THE WEBMANS WERE A

18 MONDAY THROUGH FRIDAY, 9:00 A.M. TO 10:00 P.M.  THEY WOULD STAY

19 AS LONG AS THEY WANTED.  WE TALKED ABOUT THE $2 MILLION.

20         THE COURT:  TWO POINT FIVE.

21         MR. BROCKINGTON:  TWO POINT FIVE.

22         MR. LICATA IS SORT OF GETTING OFF THE GROUND.  THAT

23 CLINIC -- I WANT TO DISTINGUISH THAT CLINIC FROM THE OTHER

24 CLINIC.  MR. LICATA'S CLINIC WAS OPEN TWO DAYS A WEEK.

25         THE COURT:  THAT'S WHAT I'M SAYING.  I GUESS MY

1   QUESTION COULD BE CHANGED.  THAT THE WAY I SEE IT MR. LICATA'S

2   SITUATION IS NOT AS BAD AS THE SITUATION THE WEBMANS HAD.  SO I

3   GUESS I SHOULD HAVE SAID TELL ME WHAT MAKES LICATA WORSE THAN

4   THE WEBMANS.

5          IN OTHER WORDS, LICATA HAS 3900 KILOGRAMS EQUIVALENT

6   OF MARIJUANA.  THE WEBMANS HAD 20,000.  FROM WHAT I CAN TELL OF

7   THE MONEY, MR. LICATA PROBABLY DID LESS THAN A MILLION DOLLARS.

8   WEBMAN DID $2.5 MILLION.  THE WEBMANS, ONE HAS THREE FELONY

9   FEDERAL CONVICTIONS.  ANOTHER ONE HAD ONE FEDERAL CONVICTION

10  NOT COUNTING THE OTHER CONVICTIONS.  MR. LICATA DOESN'T HAVE

11  ANY.

12         SO, IN OTHER WORDS, WE ARE TALKING ABOUT GIVING

13  MR. LICATA -- THE GOVERNMENT RECOMMENDED 108 MONTHS FOR

14  MR. RANDY WEBMAN WHO HAD THREE PRIOR FEDERAL CONVICTIONS AND

15  TWO OF THOSE CONVICTIONS WERE FOR THE EXACT SAME THING THAT HE

16  WAS IN HERE ON THURSDAY.  SO I'M LIKE, HOW DO WE GO FROM 108

17  MONTHS FOR MR. RANDY WEBMAN?  EVEN IF I GAVE YOU THE TWO-LEVEL

18  DOWNWARD THAT YOU ALL ARE ASKING FOR THAT STILL PUTS MR. LICATA

19  AT 151 TO 188 MONTHS.  I MEAN --

20         MR. BROCKINGTON:  I THINK WE ACTUALLY WOULD BE AT A

21  LEVEL 36, JUDGE.

22         THE COURT:  36.  EXCUSE ME.  THEN I JUMPED IT TOO

23  FAR.

24         MR. BROCKINGTON:  IT'S 188 TO 235.

25         THE COURT:  IT'S 168 TO -- IT'S 188 TO 235 MONTHS.


                        UNITED STATES DISTRICT COURT

1   NOT BEING DISRESPECTFUL TO THE WEBMANS, BUT IT SEEMS LIKE THE

2   REAL BAD ONES WILL BE GETTING LESS TIME THAN MR. LICATA.

3           MR. BROCKINGTON:  OH, AND I THINK THAT, YOU KNOW,

4   WHEN WE DISCUSSED THE BASIS -- AND I DON'T WANT TO REVISIT THAT

5   CASE.  THAT'S BEEN SENTENCED.  THAT'S OVER.  BUT THERE WERE --

6   I SAY THE SUPPORT FOR THAT CAME THROUGH NEGOTIATIONS BETWEEN

7   THE GOVERNMENT AND THE DEFENDANTS IN THAT PARTICULAR CASE AND

8   IT TOOK INTO ACCOUNT THOSE DEFENDANTS' AGE AND IT TOOK INTO

9   ACCOUNT THE CONSERVATION OF RESOURCES THROUGH HAVING A TRIAL.

10          AGAIN, ON ONE HAND, I THINK THAT THE EVIDENCE IN THIS

11  PARTICULAR CASE WAS OVERWHELMING, CERTAINLY MORE SO THAN --

12          THE COURT:  YOU HAD SOME PRETTY GOOD EVIDENCE IN THE

13  WEBMAN CASE AS WELL.

14          MR. BROCKINGTON:  WELL, YOU KNOW, I MEAN IN TERMS

15  OF -- THERE WAS NO TITLE III WIRETAP IN THAT PARTICULAR CASE.

16  THERE WAS HERE.  I THINK THAT IT'S EVIDENCED, THE STRENGTH OF

17  THE GOVERNMENT'S CASE WAS EVIDENCED BY HOW QUICKLY MR. LICATA

18  CAME IN TODAY.

19          AGAIN, WITH RESPECT TO DIFFERENCES, I MEAN THE

20  DIFFERENCES THERE, I ACKNOWLEDGE THAT WHILE MR. LICATA WAS OPEN

21  FOR TWO DAYS A WEEK, THE RATIONALE THERE, THERE CERTAINLY WAS A

22  DIFFERENCE IN GREED.  I WILL SAY THAT MR. LICATA PROBABLY COULD

23  HAVE BEEN OPEN LONGER, PROBABLY COULD HAVE HAD MORE PATIENTS BE

24  SEEN IN ONE DAY, BUT WE KNOW THROUGH INTERCEPTED TELEPHONE

25  CALLS THAT MR. LICATA DIDN'T WANT TO PAY THE DOCTOR A BONUS, SO

1   HE WOULD SORT OF ARTIFICIALLY CUT OFF THE NUMBER OF PATIENTS

2   THAT HE WOULD SEE IN A PARTICULAR DAY BECAUSE THERE WAS AN

3   AGREEMENT FOR THE DOCTOR TO RECEIVE A BONUS BASED ON THE NUMBER

4   OF PATIENTS THAT HE SAW.

5          I MEAN I THINK WE ARE AT 188 TO 235 MONTHS AFTER WE

6   HAVE CALCULATED THE GUIDELINES.  I MEAN THE DIFFERENCES HERE

7   ARE, I MEAN, THERE WERE -- I MEAN THE ADJUSTMENTS HERE, YOU

8   HAVE OVERRULED THE OBJECTIONS TO THEM.  WE DIDN'T HAVE THE

9   LIVELIHOOD OBJECTION THERE.  IT MAY HAVE BEEN APPROPRIATE

10  THERE.

11         THE COURT:  IT'S THAT WORD THAT YOU ALL ALL LIKE TO

12  USE ALL THE TIME:  "JUDGE, IT IS ONLY ADVISORY."

13         MR. BROCKINGTON:  WELL --

14         THE COURT:  I'LL NEED TO PUT THAT ON THE TOP UP HERE.

15  "IT IS ONLY ADVISORY."

16         MR. BROCKINGTON:  I MEAN I'LL SAY THIS:  WE DIDN'T

17  OBJECT TO MR. LICATA BEING ABLE TO COME IN AND PROVIDE 3553(A)

18  FACTORS THAT WOULD MITIGATE HIS SENTENCE, THAT WOULD MITIGATE

19  IN FAVOR OF A SENTENCE BELOW THE GUIDELINE RANGE OF 188 MONTHS.

20  WE DIDN'T OBJECT TO THAT BECAUSE I FULLY ANTICIPATE YOUR HONOR

21  TO ACTUALLY VARY DOWNWARD HERE IN THAT CASE TO AVOID THE

22  UNWANTED SENTENCING DISPARITY THAT WE SAW WITH THE WEBMANS.

23         SO OUR RECOMMENDATION IS THE 188 MONTHS.  WE ARE

24  BOUND BY THAT BY THE PLEA AGREEMENT.  AND SOMETIMES THAT

25  RECOMMENDATION FAVORS A DEFENDANT AND IN THIS CASE IT'S ONE

1    THAT IT WON'T.  I WILL SAY THIS:  THAT'S GOING TO BE OUR

2    RECOMMENDATION.  I FULLY ANTICIPATE YOUR HONOR TO VARY

3    UNDERNEATH THAT.  AND DEPENDING ON THAT NUMBER I MEAN IT'S VERY

4    POSSIBLE THAT THE GOVERNMENT HAS AN OBJECTION TO THAT.

5            THE COURT:  LET ME SAY THIS WHILE YOU ARE STANDING UP

6    THERE, MR. BROCKINGTON.  I AM NOT SAYING -- I AM NOT TRYING TO

7    GIVE YOU A HARD TIME OR THE GOVERNMENT'S OFFICE A HARD TIME.

8    AS FAR AS I CAN SEE IN THESE CASES AND THIS CASE YOU ALL HAVE

9    TRIED TO BE FAIR.  I HAVE NO ARGUMENT OR DISAGREEMENT WITH THE

10   GOVERNMENT'S POSITION.  I AGREE YOU HAVE TO ASK FOR 188 MONTHS.

11   I THINK YOU COULD TELL BY THE QUESTIONS I AM ASKING, AND YOU

12   HAVE BEEN AROUND ME LONG ENOUGH TO KNOW AND YOUR CO-COUNSEL IS

13   ALREADY SMILING, I AM NOT GOING WITH 188 MONTHS.  BUT I WANT TO

14   SAY TO YOU WHILE YOU ARE STANDING THERE SO YOU DON'T READ IT

15   WRONG.  I AM NOT TRYING TO GIVE YOU A HARD TIME.  I AM NOT

16   TRYING TO SAY YOU ALL ARE BEING UNFAIR.  I JUST THINK THIS IS

17   THE REASON WHY WE HAVE BOOKER.

18           YOU KNOW, IN THE OLD DAYS WHEN I TALKED TO JUDGE

19   STORY AND JUDGE PANNELL -- AND MR. STRONGWATER IS BACK THERE

20   SMILING -- I HAD NO CHOICE.  BUT NOW I DO HAVE A CHOICE AND

21   IT'S GOING TO BE A LITTLE BIT LESS, BUT AGAIN, I DON'T HAVE ANY

22   PROBLEMS WITH YOU AND I WANT YOU TO UNDERSTAND THAT PART.

23           MR. BROCKINGTON:  OH, NO.  I CERTAINLY AGREE THERE.

24   I MEAN, AGAIN, THERE SORT OF WE WERE DUTY -- WE WERE BOUND BY

25   THAT PLEA AGREEMENT TO RECOMMEND 188 AND WE THOUGHT THAT

1   THAT -- YOU HEARD ME SAYING THEN THIS WAS VERY GENEROUS, JUDGE.

2   THIS IS A VERY GENEROUS RECOMMENDATION.  I THOUGHT 188 MONTHS

3   WAS TOO LOW THERE AND YOUR HONOR WENT UP.  I THINK 188 MONTHS

4   IS TOO HIGH HERE AND I ANTICIPATE YOUR HONOR GOING DOWN.  SO

5   THAT 188 MONTHS IS SOLELY BECAUSE THAT WE ARE BOUND BY THE PLEA

6   AGREEMENT TO DO THAT.

7           ALL OF THE PROMISES IN THE PLEA AGREEMENT WE HAVE

8   STUCK TO.

9           THE COURT:  THAT IS TRUE.  YOU HAVE.

10          MR. BROCKINGTON:  THAT IS, PROVIDING THE COOPERATION,

11  MR. LICATA'S COOPERATION, MAKING THAT KNOWN TO THE SENTENCING

12  COURT.  I THINK THAT SHOULD, I THINK THAT SHOULD AFFECT SORT OF

13  THE SENTENCE THAT YOU IMPOSE TODAY.

14          SO WITH THAT SAID, YOU KNOW, I WILL ALLOW THE JUDGE

15  TO MAKE HIS DECISION.

16          THE COURT:  THANK YOU, MR. BROCKINGTON.

17          MR. BROCKINGTON:  YOU'RE WELCOME.

18          THE COURT:  NOW, MR. LICATA, YOU HAVE THREE FINE

19  ATTORNEYS AND THEY HAVE REPRESENTED YOU VERY WELL BUT THE LAW

20  SAYS YOU HAVE A RIGHT TO ALLOCUTE OR TELL ME ANYTHING YOU WANT

21  TO TELL ME BEFORE I SENTENCE YOU.

22          THE DEFENDANT:  SURE, SIR.  YOU KNOW --

23          THE COURT:  PLEASE STAND UP, SIR.

24          THE DEFENDANT:  YES.

25          THE COURT:  COME UP TO THE PODIUM SO THE COURT

UNITED STATES DISTRICT COURT

 1   REPORTER CAN HEAR YOU.

 2           THE DEFENDANT:  HI.

 3           FIRST OF ALL, THANK YOU FOR TAKING THE TIME TO HEAR

 4   WHAT I HAVE TO SAY.  YOU KNOW, WHAT THEY ARE SAYING IS TRUE.  I

 5   DID COME TO ATLANTA TO OPERATE A PILL MILL AND I WANT YOU TO

 6   KNOW I TAKE FULL RESPONSIBILITY FOR MY ACTIONS.  I KNOW WHAT I

 7   DID, YOU KNOW, DEFINITELY AFFECTED A LOT OF PEOPLE AND, YOU

 8   KNOW, I'D LIKE TO APOLOGIZE TO THE VICTIMS.  EVEN THOUGH THE

 9   PSR SAYS IT'S UNIDENTIFIABLE VICTIMS, I'M SURE PEOPLE IN A LOT

10   OF FAMILIES WERE AFFECTED BY MY ACTIONS AND WHAT I DID.

11           GOING FORWARD, YOU KNOW, I KNOW I HAVE A SIGNIFICANT

12   AMOUNT OF TIME IN FRONT OF ME IN JAIL AND I PLAN TO MAKE THE

13   BEST OF IT.  AND WHEN I GET OUT, HOPEFULLY IN NOT TOO LONG, I

14   PLAN TO BE A BETTER PERSON, YOU KNOW, AN ASSET TO THE COMMUNITY

15   AS OPPOSED TO A DRAIN ON SOCIETY LIKE I HAVE BEEN.

16           SO WITH THAT I THANK YOU FOR HEARING ME OUT.

17           THE COURT:  THANK YOU, MR. LICATA.

18           MR. ELLIS:  YOUR HONOR, BRIEFLY?

19           A MATH ISSUE.  I HEARD THE PROBATION OFFICER SAY THAT

20   THE GUIDELINES, THE RESULTANT GUIDELINES AFTER THE COURT RULED

21   ON OUR OBJECTIONS WERE 235 TO 293.  AM I CORRECT THERE?

22           THE COURT:  YES.

23           MR. ELLIS:  AND THEN THE GOVERNMENT INDICATED IT WAS

24   GOING TO RECOMMEND A THREE-LEVEL VARIANCE BELOW THAT, ONE FOR

25   JUDICIAL ECONOMY PLUS THE TWO.  TO ME THAT TAKES IT DOWN TO A

1  35, 168 TO 210.

2  THE COURT:  MR. ELLIS?

3  MR. ELLIS:  YES.

4  THE COURT:  THERE WAS A JUDGE THAT TOLD ME ONE TIME

5  YOU'VE GOT TO KNOW HOW TO READ THE JUDGE.

6  MR. ELLIS:  I HAVE.

7  THE COURT:  AND STOP WHEN YOU ARE AHEAD.

8  MR. ELLIS:  YES.  A GOOD LAWYER KNOWS WHEN TO SIT

9  DOWN AND SHUT UP.

10  THE COURT:  THERE YOU GO.

11  MR. ELLIS:  THANK YOU.

12  THE COURT:  ALL RIGHT.  WE START OFF WITH A LEVEL 38,

13  OFFENSE LEVEL OF A 38, A CRIMINAL HISTORY CATEGORY OF A ONE AND

14  A CUSTODY GUIDELINE RANGE OF 235 TO 293 MONTHS.

15  TAKING INTO CONSIDERATION THE 3553(A) FACTORS AND IN

16  PARTICULAR DEALING WITH SENTENCE DISPARITY -- NOW, LET ME SAY

17  THIS, STARTING OFF WITH THE GOVERNMENT.  I UNDERSTAND THE

18  GOVERNMENT KNOWS MORE ABOUT THESE CASES THAN I DO.  I

19  UNDERSTAND YOU ALL MAKE RECOMMENDATIONS BASED ON WHAT YOU ALL

20  HAVE IN FRONT OF YOU AT THE TIME AND WHAT YOU ALL THINK IS

21  BEST.  AND MR. BROCKINGTON DID SAY LAST WEEK FOUR OR FIVE TIMES

22  HE THOUGHT THE 188-MONTH RECOMMENDATION OF THE GOVERNMENT WAS

23  VERY GENEROUS.  AND I DIDN'T QUITE THINK I WAS GOING TO BE AS

24  GENEROUS AS THE GOVERNMENT WAS AND MY SENTENCES REFLECTED THAT.

25  SO I DON'T HAVE ANY REAL PROBLEMS WITH THE

UNITED STATES DISTRICT COURT

1  GOVERNMENT'S RECOMMENDATION, BECAUSE YOU ARE BOUND BY THE 188

2  MONTHS THAT YOU SAID.  HOWEVER, IT'S MY JOB AS JUDGE -- YOU

3  KNOW, YOU COULD STICK A COMPUTER UP HERE IF ALL I DID WAS JUST

4  LOOK AND SPIT THE NUMBERS OUT AND GIVE YOU A SENTENCE, BUT

5  THAT'S NOT MY JOB AS JUDGE.  MY JOB AS JUDGE IS TO LOOK AT THE

6  WHOLE PICTURE AND IT WOULD BE A GREAT DISPARITY BETWEEN THE

7  TWO.

8          NOW, MR. LICATA, I AM NOT SAYING -- I DON'T THINK YOU

9  ARE A BAD, BAD PERSON FROM THE LETTERS THAT I READ ABOUT YOU,

10  THE FAMILY LETTERS, BUT YOU YOURSELF SAID WHAT YOU DID HAS

11  AFFECTED A LOT OF PEOPLES' LIVES AND WE ARE GOING TO HAVE MORE

12  PEOPLE PROBABLY ADDICTED BECAUSE OF WHAT YOU WERE DOING.  SO I

13  AM NOT TRYING TO SAY YOU ARE A HORRIBLE, HORRIBLE PERSON, BUT I

14  AM NOT GOING TO MAKE YOU INTO AN ANGEL EITHER.

15          THE DEFENDANT:  RIGHT.

16          THE COURT:  BECAUSE YOU KNEW EXACTLY WHAT YOU WERE

17  DOING.

18          THE DEFENDANT:  RIGHT.

19          THE COURT:  BUT LOOKING AT THE 3553(A) FACTORS AND

20  THE FACTS IN THIS CASE, AND AGAIN, IN PARTICULAR, SENTENCE

21  DISPARITY, IF YOU WILL STAND UP, SIR, I AM READY TO SENTENCE

22  YOU.

23          REGARDING COUNT ONE, I AM GOING TO SENTENCE YOU TO

24  132 MONTHS OF CONFINEMENT, COUNT TWO WILL BE 132 MONTHS AND

25  COUNT 22 WILL BE 132 MONTHS ALL TO RUN CONCURRENT.  YOU WILL

1 GET THREE YEARS' SUPERVISED RELEASE.

2          LET ME SAY THIS:  YOU START OFF WITH A LEVEL 38.  I'M

3 VARYING DOWN SIX LEVELS TO A 32 AND THAT PUTS US IN A RANGE OF

4 121 TO 151 MONTHS.  SO I AM GOING BEYOND THE TWO LEVELS THAT

5 YOU ALL REQUESTED.  I AM GOING DOWN SIX LEVELS FROM A 38 TO A

6 32.  THAT'S HOW I GET 132 MONTHS.  SO WE ARE RIGHT IN THE

7 MIDDLE IN THERE.

8          YOU MADE MONEY OFF OF THIS AND I AM GOING TO FINE YOU

9 $25,000.  YOU KNOW, YOU MADE MONEY OFF OF THIS.  YOU SHOULD PAY

10 MONEY BACK.  THERE IS GOING TO BE A $300 SPECIAL ASSESSMENT.

11 YOU WILL PAY THE FINE OFF AT A RATE TO BE DETERMINED AND

12 OUTLINED IN MY ORDER.  THE PROBATION OFFICER WILL GO OVER THAT

13 WITH YOU.  ALSO, SHE WILL GO OVER ALL OF THE CONDITIONS OF

14 PROBATION, SUPERVISED RELEASE WITH YOU.

15          I WILL ALLOW YOU TO REMAIN OUT ON BOND UNTIL THE

16 BUREAU OF PRISONS CAN DETERMINE WHERE THEY WOULD LIKE TO HAVE

17 YOU SERVE YOUR SENTENCE.  YOU WILL HAVE TO STILL MEET ALL THE

18 CONDITIONS AS SET OUT IN YOUR BOND ORDER.  IF YOU VIOLATE ANY

19 OF THEM, YOU COULD HAVE YOUR BOND REVOKED AND PUT IN JAIL.

20          MR. MORRISON:  YOUR HONOR, MAY MR. BROCKINGTON AND I

21 APPROACH THE BENCH, PLEASE?

22          THE COURT:  YES.

23                    (AT THE BENCH)

24          MR. MORRISON:  JUDGE, WE JUST WANTED TO GIVE YOU A

25 HEADS UP THAT WE HAVE BEEN TALKING ABOUT HIS TESTIMONY AGAINST

1   DR. ROLAND AND THERE IS A POSSIBILITY THAT HE WILL BE

2   DESIGNATED SHORTLY BEFORE THEN.

3        THE COURT:  ALL YOU ALL NEED TO DO IS LET ME KNOW.

4   ALL YOU NEED TO DO IS FILE A MOTION ASKING THAT HE BE OUT

5   LONGER AND YOU CONSENT TO IT.

6        MR. BROCKINGTON:  I WOULD NOT OPPOSE IT.  THAT WAS

7   IT.

8        THE COURT:  YOU ARE NOT OPPOSED TO IT.

9        MR. MORRISON:  THANK YOU.

10        THE COURT:  AND THEN WE CAN GO FROM THERE.

11        MR. BROCKINGTON:  ALL RIGHT.

12        MR. MORRISON:  THANK YOU.

13        THE COURT:  EXPLAIN THAT TO HIM, MR. MORRISON, SO HE

14   WILL KNOW.

15                  (IN OPEN COURT)

16        NOW, THE COURT FINDS, BELIEVES THIS IS A REASONABLE

17   SENTENCE TAKING INTO CONSIDERATION AGAIN THE FACTORS UNDER 18

18   U.S.C. 3553 AND THE FACTS THAT THE COURT KNOWS ABOUT THIS CASE.

19        AT THIS TIME ARE THERE ANY EXCEPTIONS COMING FROM THE

20   GOVERNMENT?

21        MR. BROCKINGTON:  NONE FROM THE GOVERNMENT, YOUR

22   HONOR.

23        THE COURT:  THANK YOU, MR. BROCKINGTON.

24        MR. ELLIS OR MR. MORRISON, ANY EXCEPTIONS?

25        MR. MORRISON:  NONE FROM THE DEFENDANT, YOUR HONOR.

UNITED STATES DISTRICT COURT

1          THE COURT:  OKAY.  NOW, MR. LICATA, I NEED TO

2    EXPLAIN.  EVEN THOUGH THIS IS A NEGOTIATED PLEA, I NEED TO

3    EXPLAIN YOUR APPEAL RIGHTS TO YOU.

4          YOU CAN APPEAL YOUR CONVICTION IF YOU BELIEVE THAT

5    YOUR GUILTY PLEA WAS SOMEHOW UNLAWFUL OR INVOLUNTARY OR IF

6    THERE IS SOME OTHER FUNDAMENTAL DEFECT IN THE PROCEEDINGS THAT

7    WAS NOT WAIVED BY YOUR GUILTY PLEA.  YOU MAY ALSO HAVE A

8    STATUTORY RIGHT TO APPEAL YOUR SENTENCE UNDER CERTAIN

9    CIRCUMSTANCES, PARTICULARLY IF YOU THINK THE SENTENCE IS

10   CONTRARY TO LAW.  HOWEVER, A DEFENDANT MAY WAIVE THOSE RIGHTS

11   AS PART OF A PLEA AGREEMENT AND YOU HAVE ENTERED INTO A PLEA

12   AGREEMENT WHICH WAIVES SOME OR ALL YOUR RIGHTS TO APPEAL THE

13   SENTENCE ITSELF.  SUCH WAIVERS ARE GENERALLY ENFORCEABLE BUT IF

14   YOU BELIEVE THE WAIVER IS UNENFORCEABLE YOU CAN PRESENT THAT

15   THEORY TO AN APPELLATE COURT.

16         WITH FEW EXCEPTIONS ANY NOTICE OF APPEAL MUST BE

17   FILED WITHIN 14 DAYS OF JUDGMENT BEING ENTERED IN YOUR CASE.

18   IF YOU ARE UNABLE TO PAY THE COST OF AN APPEAL, YOU MAY APPLY

19   FOR LEAVE TO APPEAL IN FORMA PAUPERIS.  IF YOU SO REQUEST, THE

20   CLERK OF THE COURT WILL PREPARE AND FILE A NOTICE OF APPEAL ON

21   YOUR BEHALF.

22         MR. LICATA, ANY QUESTIONS ABOUT YOUR RIGHT TO APPEAL?

23         THE DEFENDANT:  NO, SIR.

24         THE COURT:  MR. ELLIS, MR. MORRISON, OR HADDAD,

25   ANYTHING ELSE FROM THE DEFENSE?

1             MR. ELLIS:  YES, YOUR HONOR.  WE WOULD ASK THE COURT

2      TO MAKE A RECOMMENDATION TO THE BUREAU OF PRISONS, RECOGNIZING

3      IT'S ONLY A RECOMMENDATION.

4             THE COURT:  YES, SIR.

5             MR. ELLIS:  AND I HAVE IT.  I HAVE SHOWN IT TO THE

6      PROSECUTOR.  HE HAS NO OBJECTION.  IF I MAY, I WOULD HAND IT UP

7      TO THE COURT.

8             THE COURT:  JUST TELL ME WHAT IT IS, WHERE YOU WANT

9      HIM TO SERVE HIS SENTENCE.

10            MR. ELLIS:  THE COURT STRONGLY RECOMMENDS PLACEMENT

11      AT THE FEDERAL PRISON CAMP, MIAMI, FLORIDA, OR IF NOT

12      AVAILABLE, THEN THE FEDERAL PRISON CAMP AT PENSACOLA, FLORIDA,

13      OR THE FEDERAL PRISON CAMP IN MONTGOMERY, ALABAMA, AND THE

14      BUREAU OF PRISONS RDAP PROGRAM, THE DRUG PROGRAM.  THIS WOULD

15      ACCORD A VISITATION WITH HIS FAMILY AND FIANCEE AND SHOULD THE

16      BUREAU NOT BE ABLE TO ACCORD WITH THE RECOMMENDATION THE COURT

17      REQUESTS A WRITTEN RESPONSE.  AND I CAN HAND THAT UP.

18            THE COURT:  MR. ELLIS, AS YOU JUST INDICATED, I WILL

19      MAKE THE RECOMMENDATIONS TO THE BUREAU OF PRISONS ON MOST OF

20      WHAT YOU SAID.  BUT AS FAR AS THE VISITATION OF THE FAMILY,

21      THAT FALLS COMPLETELY UNDER THE CONTROL OF THE BUREAU OF

22      PRISONS AND I RESPECT THEM AND LET THEM MAKE THOSE KINDS OF

23      DECISIONS.  WHERE HE SERVES HIS SENTENCE, AGAIN, I WILL MAKE

24      THAT RECOMMENDATION TO THE BUREAU OF PRISONS.  USUALLY IF THEY

25      CAN DO IT, THEY WILL DO IT.  IF THEY DON'T, AS YOU JUST

1   INDICATED, IT'S ONLY A RECOMMENDATION.  BUT I WON'T MAKE THE

2   RECOMMENDATION REGARDING THE VISITATION ASPECT BECAUSE I THINK

3   THAT IS GOING BEYOND WHAT I SHOULD BE DOING.

4           MR. ELLIS:  IT'S ONLY A RATIONALE IN SUPPORT OF THE

5   RECOMMENDATION, NOT A RECOMMENDATION.

6           THE COURT:  ALL RIGHT.

7           MR. ELLIS:  SO MAY I HAND IT UP?

8           THE COURT:  YOU CAN HAND THAT TO MS. OSWALD.

9           MR. ELLIS:  THANK YOU, YOUR HONOR.

10          THE COURT:  ANYTHING ELSE, MR. BROCKINGTON?

11          MR. BROCKINGTON:  NOTHING ELSE FROM THE GOVERNMENT,

12  YOUR HONOR.

13          THE COURT:  ALL RIGHT.  THANK YOU ALL.

14          HAVE A GREAT DAY.

15          MR. MORRISON:  THANK YOU, JUDGE.

16              (PROCEEDINGS CONCLUDED)

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

1                    C E R T I F I C A T E

2

3    UNITED STATES OF AMERICA

4    NORTHERN DISTRICT OF GEORGIA

5           I, DAVID A. RITCHIE, OFFICIAL COURT REPORTER OF THE

6    UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

7    GEORGIA, DO HEREBY CERTIFY THAT THE FOREGOING 58 PAGES

8    CONSTITUTE A TRUE TRANSCRIPT OF PROCEEDINGS HAD BEFORE THE SAID

9    COURT, HELD IN THE CITY OF ATLANTA, GEORGIA, IN THE MATTER

10   THEREIN STATED.

11          IN TESTIMONY WHEREOF, I HEREUNTO SET MY HAND ON THIS,

12   THE 2ND DAY OF MAY, 2016.

13

14

15                     _____

16                     DAVID A. RITCHIE
                       OFFICIAL COURT REPORTER
17                     NORTHERN DISTRICT OF GEORGIA

18

19

20

21

22

23

24

25


                    UNITED STATES DISTRICT COURT